## Richmond.

### ALBERT JOHNSON v. COMMONWEALTH.

#### January 18, 1923.

1. CRIMINAL LAW—*Drunkenness as a Defense—Question for Jury.*—On a prosecution for malicious shooting with intent to kill, 'etc., whether accused was drunk, and, if so, how drunk, was an inquiry exclusively within the province of the jury, where the evidence was in conflict as to the extent of his intoxication.

2. CRIMINAL LAW—*Drunkenness as a Defense—Instructions—Voluntary and Involuntary Drunkenness.*—In the instant case, a prosecution for malicious shooting with intent to kill, accused asked for an instruction that if the jury believed that he was in such an intoxicated state that he did not know right from wrong, or, if he knew, had not the power to control or restrain his action, they should find him not guilty, though such irresponsibility was the result of intoxication. The court refused to give this instruction, substituting therefor an instruction to the effect that drunkenness was no excuse for crime, although such drunkenness may have produced temporary insanity. One cannot voluntarily make himself so drunk as to become on that account irresponsible for his conduct during such drunkenness.

   *Held:* No error, where accused's drunken condition was voluntary on his part.

3. CRIMINAL LAW—*Verdict—Assumption that Accused Convicted of the Larger of two Offenses Embraced by the Indictment.*—In the instant case the indictment embraced a charge of malicious shooting with intent to kill. The verdict fixed a punishment which might lawfully have been prescribed for either a malicious shooting with intent to kill, or merely an unlawful shooting.

   *Held:* That it must be assumed that defendant had been convicted of the larger offense.

4. ASSAULT AND BATTERY—*Homicide—Malicious Shooting with Intent to Kill—What Constitutes the Offense.*—Whether a prisoner on trial for malicious shooting with intent to kill is guilty of that charge depends upon whether, if death had resulted, he would have been guilty of murder—either in the first or second degree, it matters not which.

5. ASSAULT AND BATTERY—*Malicious Shooting—Drunkenness—Specific Intent—Principles Applicable in Homicide Cases.*—On a prosecution for malicious shooting with intent to kill, the principles of law governing the effect of intoxication upon the defendant's guilt are the same as

those which apply in homicide cases, and the law concerning cases in which a specific intent is an essential element of the offense charged is inapplicable.

6.  HOMICIDE—*Assault and Battery—Deadly Weapon.*—Where one man wounds another with a deadly weapon, the law imputes a malicious intent to the act.

7.  CRIMINAL LAW—*Voluntary Drunkenness as a Defense—General Rule—Homicide.*—It has long been settled in Virginia, and elsewhere generally, that voluntary drunkenness (as distinguished from settled insanity produced by drink) affords no excuse for crime, save only that where premeditation is a material question the intoxication of the accused may be considered by the jury. As between murder in the first degree and murder in the second degree, voluntary drunkenness may be a legitimate subject of inquiry; but, as between murder in the second degree and manslaughter, it is never material and cannot be considered.

8.  ASSAULT AND BATTERY—*Malicious Shooting—Homicide—Shooting with Deadly Weapon without Provocation.*—Where one with a deadly weapon shoots another without provocation he is guilty of malicious shooting, and if the wound results in death, is guilty of murder in at least the second degree.

9.  CRIMINAL LAW—*Drunkenness as a Defense—Involuntary Drunkenness.*—In cases of involuntary drunkenness the law properly recognizes an exception to the general rule that drunkenness is no defense for crime. Involuntary drunkenness, brought about by the contrivance of enemies or by casualty, exempts from punishment, if it unsettles the reason.

10. CRIMINAL LAW—*Drunkenness as a Defense—What Constitutes Involuntary Drunkenness—Case at Bar.*—Where one suffering with a toochache procured whiskey contrary to law, drank it contrary to law, and did both of his own volition and without even a suggestion from his physician, his consequent drunkenness would not avail him as a defense for crime; nor would it even before the days of prohibition, when his conduct in procuring and taking the whiskey would have been lawful.

11. CRIMINAL LAW—*Drunkenness—Reason for the Rule in Regard to Drunkenness as a Defense.*—Drunkenness has always been recognized as a vice, and the reason most usually assigned for the rule that it does not excuse crime is that no man may be allowed to expose the public to the danger of harm or violence caused by his own misconduct in voluntarily rendering himself dangerous.

12. CRIMINAL LAW—*Drunkenness as a Defense—Test of Involuntary Drunkenness.*—The only safe test of involuntary drunkenness, and the one almost if not quite universally found in the authorities, is the absence of an exercise of independent judgment and volition on the part of the

accused in taking the intoxicant—as, for example, when he has been made drunk by fraudulent contrivance of others, by casualty, or by error of his physician.

13. ASSAULT AND BATTERY—*Malicious Shooting—Sufficiency of Verdict.*— Under an indictment for malicious shooting with intent to maim, disfigure, disable and kill, a verdict of guilty fixing accused's punishment at three years in the penitentiary is good, notwithstanding the verdict did not find whether the accused was guilty of malicious or simply unlawful shooting, and did not find that the act was done with intent to maim, disfigure, disable, or kill.

Error to a judgment of the Hustings Court of the city of Richmond.

*Affirmed.*

The opinion states the case.

*Jas. C. Page,* for the plaintiff in error.

*John R. Saunders, Attorney-General, J. D. Hank, Jr., Assistant Attorney-General,* and *Leon M. Bazile, Second Assistant Attorney-General,* for the Commonwealth.

KELLY, P., delivered the opinion of the court.

The indictment in this case charged that the defendant, Albert Johnson, "unlawfully, feloniously and maliciously" shot and wounded one A. C. Holt with the intent to "unlawfully, feloniously and maliciously maim, disfigure, disable and kill" him. The verdict of the jury upon which the court entered the judgment here complained of was as follows: "We, the jury, find the prisoner guilty, and fix his punishment at three years in the penitentiary."

[1, 2] At the time of the alleged offense the defendant was more or less under the influence of liquor, which he claimed to have taken to relieve a toothache. He had been reported to police headquarters for "shooting up Clay street," in Richmond, and for that reason two

policemen, one of whom was Holt, were arresting him and another negro when he shot Holt in the head, inflicting a serious but not fatal wound. The shooting was entirely unprovoked and the only defense seriously relied upon was sought to be made before the jury by the following instruction, which the trial court refused to give:

"If the jury believe from the evidence that at the time of the alleged shooting Albert Johnson was in such an intoxicated state that he did not know right from wrong, or if he knew, had not the power to control or restrain his action, they will find him not guilty, though such insanity or irresponsibility was the result of intoxication."

After refusing the foregoing instruction, the court gave the following substitute therefor:

"The court instructs the jury that drunkenness is no excuse for crime, although such drunkenness may have produced temporary insanity during the existence of which the criminal act was committed. In other words a person cannot voluntarily make himself so drunk as to become on that account irresponsible for his conduct during such drunkenness. He may be perfectly unconscious of what he does and yet be responsible. He may be incapable of express malice; but the law imputes malice in such a case from the nature of the instrument used, the absence of provocation and other circumstances under which the act was done."

The action of the court in refusing the former instruction, and in giving the latter, constitutes the first ground upon which we are asked to reverse the judgment, and gives rise to the only debatable question, and the only important question, in the case.

The evidence was in conflict as to the extent to which the defendant was intoxicated. Some of the testimony

for the Commonwealth tended to show that he was only very slightly under the influence of liquor—"drinking a little, but not drunk," as one of the witnesses described his condition.   Other witnesses, some for the Commonwealth and some for the defendant, said he appeared to be "crazy drunk," or "wild and crazy."   Whether he was drunk, and if so, how drunk, was an inquiry exclusively within the province of the jury, and the only question for us to decide is whether they were properly instructed as to how his state of intoxication, if they believed he was in that state, would affect his guilt. This question, in turn, depends upon the further question as to whether his intoxication is to be viewed in the light of an ordinary case of "voluntary drunkenness." There was no effort to prove anything like settled insanity from the use of whiskey.   If he was intoxicated to a degree which affected his reason and self-control, he was simply on a spree of recent origin.   If his drunken condition is to be regarded as voluntary on his part (and, to all intents and purposes, it was so treated by the court and counsel below, and in the assignments of error which bring the case before us), the instruction offered was plainly wrong, and the one given by the court was plainly right.

[3] The indictment embraced a charge of malicious shooting with intent to kill.   The verdict, hereinafter more specifically dealt with, fixed a punishment which might lawfully have been prescribed for either a malicious shooting with the intent aforesaid, or merely an unlawful shooting; but we must assume that the defendant has been convicted of the larger offense.   See *Lee's Case, post* p. 572, 115 S. E. 671, decided to-day.

[4-7] Whether a prisoner on trial for malicious shooting with intent to kill is guilty of that charge depends upon whether if death had resulted he would have been

guilty of murder—either in the first or second degree, it matters not which. *Read's Case*, 22 Gratt. (63 Va.) 924, 937. The principles of law, therefore, governing the effect of intoxication upon the defendant's guilt are the same as those which apply in homicide cases. We are not concerned here with the law as applied to cases in which a specific intent is an essential element of the offense charged. It is generally said that in contemplation of law no specific intent is essential to the crime of murder in the second degree, but in this case it is sufficient to say that where one man wounds another with a deadly weapon, the law imputes a malicious intent to the act. 17 Am. & Eng. Ency. L. (2d ed.) 413, and cases cited, and also authorities *infra*. It is quite true that murder in the first degree involves a premeditated purpose of which an intoxicated person may be incapable, but this distinction is not material to the issues arising under the instructions here. We speak in this case as if we were dealing with a conviction of murder in the second degree. It has long been settled in Virginia, and elsewhere generally, that voluntary drunkenness (as distinguished from settled insanity produced by drink) affords no excuse for crime, save only that where premeditation is a material question the intoxication of the accused may be considered by the jury. As between murder in the first degree and murder in the second degree, voluntary drunkenness may be a legitimate subject of inquiry, but as between murder in the second degree and manslaughter it is never material and cannot be considered. 1 Hurst's Ency. of Va. Law, 552; Minor's Syn. Cr. Law, 8; Davis' Crim. Law. 29; *Boswell's Case*, 20 Gratt. (61 Va.) 860; *Willis' Case*, 32 Gratt. (73 Va.) 929; *Longley's Case*, 99 Va. 807, 37 S. E. 339; *State* v. *Robinson*, 20 W. Va. 713, 43 Am. Rep. 799; *State* v. *Kidwell*, 62 W. Va. 466, 59 S. E. 494, 13 L. R. A. (N. S.)

34

1024; *State* v. *Wilson*, 116 Iowa, 309, 144 N. W. 47, 147 N. W. 739; *State* v. *Morris*, 83 Or. 429, 163 Pac. 567; *Atkins* v. *State*, 119 Tenn. 458, 105 S. W. 353, 13 L. R. A. (N. S.), 1031; *Wilson* v. *State*, 60 N. J. L. 171, 37 Atl. 954, 38 Atl. 428.

[8] The specific objection urged against the instruction given by the court in the instant case is that it told the jury in effect that if the defendant shot Holt without provocation, he was guilty of malicious shooting with the intent to kill. This contention necessarily raises the question whether, if the defendant had killed Holt, he would have been guilty of murder in at least the second degree. The answer clearly is in the affirmative. There was no pretense of provocation, and the defendant used a deadly weapon. In *Boswell's Case*, *supra*, this court unreservedly and unequivocally approved the following holding of the Supreme Court of Tennessee in *Pirtle* v. *State*, 9 Humph. (Tenn.) 663: "As between the two offenses of murder in the second degree and manslaughter, the drunkenness of the offender can form no legitimate matter of inquiry; the killing being voluntary, the offense is necessarily murder in the second degree, unless the provocation were of such a character as would at common law constitute it manslaughter, and for which latter offense a drunken man is equally responsible as a sober man."

Precisely the same thing was held in *Willis' Case*, *supra*, wherein this court approved the following instruction given by the trial judge upon his own motion:

"Voluntary drunkenness does not excuse crime. Every crime committed by one in a state of intoxication, however great, is punished just as if he were sober. Drunkenness, therefore, can never be relied on as an excuse for murder. It matters not how drunk one is, if he purposely slay another, without other excuse, palliation

or justification than that of his drunkenness, he is just as guilty of murder as if he had been sober.  There are certain grades of crime, however, which a drunk man may not be capable of committing.  When a man has become so greatly intoxicated as not to be able to deliberate and premeditate, he cannot commit murder of the first degree, or that class of murder under our statute denominated a wilful, deliberate and premeditated killing.  But so long as he retains the faculty of willing, deliberating and premeditating, though drunk, he is capable of committing murder in the first degree; and if a drunk man is guilty of a wilful, deliberate and premeditated killing, he is guilty of murder in the first degree.  *If a mortal wound be given with a deadly weapon in the previous possession of the slayer, without any or on very slight provocation, but at the time of inflicting the wound the slayer's condition from intoxication is such as to render him incapable of doing a wilful, deliberate and premeditated act, he is then guilty of murder in the second degree.*  (Italics added.)

In the course of the opinion in the *Willis Case*, Judge Anderson, speaking with the unanimous concurrence of Judges Moncure, Christian, Staples and Burks, said: "Voluntary immediate drunkenness is not admissible to disprove malice or reduce the offense to manslaughter. But where, by reason of it, there is wanting that deliberation and premeditation which are necessary to elevate the offense to murder in the first degree, it is properly ranked as murder in the second degree; as the courts have repeatedly decided."  Citing *Jones' Case*, 1 Leigh (28 Va.) 598; *Pirtle* v. *State*, 9 Humph. (Tenn.) 663; *Swan* v. *State*, 4 Humph. (Tenn.) 136; *Boswell's Case*, 20 Gratt. (61 Va.) 860.

By one of the instructions given in *Hite's Case*, 96 Va. 489, 31 S. E. 895, and by one given in *Longley's Case*,

*supra,* the trial court had in effect told the jury that voluntary intoxication might so affect the mental capacity of the accused as to reduce the offense to manslaughter. Hite was convicted of murder in the first degree and Longley of murder in the second degree, and both sentences were affirmed by this court, with the result that, in a sense, the instructions in both cases were approved; but in neither case was the accused complaining of this particular feature of the instructions, and the Commonwealth, of course, did not, and could not, assign the same as error. Hence, it is clear that those two cases can only be regarded in this respect as holding that, as expressly stated by Judge Buchanan in the *Hite Case,* the instruction contained no error to the prejudice of the accused.

It is manifest, therefore, that, as already stated, the only question as to the instructions here is whether the trial court erred in treating the case as one involving *voluntary* drunkenness. We have no difficulty or hesitancy in sustaining the action of the court upon this point. For purposes of convenience and clarity we have deferred until we reached this stage of the discussion any specific statement of the facts material to this particular question.

The defendant was sober on the morning of the shooting. He was suffering from toothache. His material testimony on this point is as follows:

"A. At the beginning of it I had the toothache and I called up the dentist and asked him if he could pull it. He said he could pull it at one o'clock. I got up and went to Dr. Pettus' house. He said he was lying down taking it easy and could not pull it before two o'clock.

"Q. You went to Dr. Pettus in the morning?

"A. Yes. He said he would pull it at two o'clock. I went to Dr. Calling's office. The boy said he would be

there in an hour. It looked like twenty-five to me. The tooth was aching so bad I asked if I could get anything to drink and he called and got me some corn whiskey.

"Q. Do you know how much you drank?

"A. About three good swallows.

"Q. Do you know where you went from there?

"A. Just by the time I drank it I didn't know where I was."

In the petition containing the assignment of error (no other brief being filed in the case) no reference is made to any distinction between voluntary and involuntary drunkenness, the whole argument being addressed to the contention that (1) "intoxication may and does negative a specific intent," and (2) "does affect the degree of guilt." The alleged involuntary feature of the defendant's intoxication was suggested, however, at the oral argument before us, and while the rules of practice in this court require counsel to specifically state and point out the errors relied upon as ground of reversal, the question here raised is one of importance, and if the court erred in regard to it, the error vitally affected the merits of the case. We shall, therefore, consider the question, and shall bring to its consideration the light of what seems to us the reason of the matter and such authorities as we have found upon the subject.

[9] In cases of involuntary drunkenness the law properly recognizes an exception to the general rule above discussed. The instances in which the exception is allowed, however, are rare, and it is only recognized under strict limitations.

In Davis' Crim. Law 29, it is said: "If, however, a person by the unskillfulness of his physician, or by the contrivance of his enemies, eat or drink anything which causes frenzy or madness, he is entitled to the same

exemption from punishment for his acts thereby occasioned as other madmen."

Mr. Minor in his Synopsis of Criminal Law, at page ·8, citing 1 Russ. Cr. 8, says: "Involuntary drunkenness, brought about by the contrivance of enemies or by casualty, exempts from punishment, if it unsettles the reason."

In 16 Corpus Juris 109, it is said, that the general rule "does not apply where one involuntarily becomes drunk by being compelled to drink against his will, or through another's fraud or stratagem, or by taking liquor prescribed by a physician."

In 1 Bishop Crim. Law (4th ed.), section 489, the author says: "Yet, 'if a party be made drunk by stratagem, or the fraud of another, or the unskillfulness of his physician,' he is not responsible." To the same effect is 17 Am. & Eng. Ency. L. (2d ed.), p. 414. See also 1 Hale P. C., p. 32; *People* v. *Robinson*, 2 Parker Cr. Rep. (N. Y.) 235, 304; *Bartholomew* v. *People*, 104 Ill. 601, 605–6, 44 Am. Rep. 97. In the last named case, the decision was controlled by a statute of the State of Illinois, but the defense of involuntary intoxication allowed to be set up in that case would undoubtedly have been allowed under the common-law exception recognized in the other authorities which we have cited on this point, since the statute referred to was written stricter than the common law in this respect.

[10-12] In none of the authorities quoted or referred to above do we find anything to warrant the contention that the drunkenness of the defendant in this case entitled him to claim the benefit of the exception to the general rule. His toothache could well be regarded as a "casualty," but not so as to his drunkenness. He procured the whiskey contrary to law and drank it contrary to law, and did both of his own volition and with-

out even a suggestion from his physician.    Even before the days of prohibition, when his conduct in procuring and taking the whiskey would have been lawful, his consequent drunkenness would not have availed him as a defense for crime.    It was said then by Judge Moncure, in *Boswell's Case, supra,* and certainly must not be less true under present conditions, that "public policy and public safety imperatively require that such should be the law."    Drunkenness has always been recognized as a vice, and the reason most usually assigned for the rule that it does not excuse crime is that no man may be allowed to expose the public to the danger of harm or violence caused by his own misconduct in voluntarily rendering himself dangerous.    Strong drink varies in its effect upon different individuals.    Some are rendered violent and dangerous by it, and others are not. This difference is probably due to the fact that some men are by nature of better principle and disposition than others but whether this be so or not we need not stop here to inquire.    The important principle to keep in mind is that when a man voluntarily drinks liquor and is thereby led to commit a crime, he cannot be allowed to hide behind his condition as an excuse.    He and not others must take the risk.

The law has always jealously guarded the effect of drunkenness as a defense in criminal cases, and even with all the restrictions surrounding it, the doctrine is a dangerous one and liable to be abused.    We are not willing to render it more so by holding that an accused person can bring himself within the exception applicable in cases of involuntary intoxication by simply claiming that he drank intoxicants because he was suffering from pain or illness.    This is exactly where our decision would logically lead if we should hold that the defendant in this case was not voluntarily intoxicated.    It is too

plain for argument that such a precedent would open wide the door for false and fradulent evasion of the general rule, and would in large measure destroy its efficiency.   The rule has for ages been regarded as necessary for the safety of society, and its preservation and enforcement was never more important than under present conditions.   The country is full of "bootleg" liquor—much of it impure and calculated to produce a state of wild intoxication.   Provision is made by law for procuring upon prescription from reputable physicians a reasonable amount of pure whiskey for medical purposes.   When people undertake, as the defendant in this case did, to prescribe for themselves and to select their own supply, they must be held responsible for the consequences.   The only safe test of involuntary drunkenness, and the one almost if not quite universally found in the authorities, is the absence of an exercise of independent judgment and volition on the part of the accused in taking the intoxicant—as, for example, when he has been made drunk by fraudulent contrivance of others, by casualty, or by error of his physician.

[13] The remaining assignment of error calls in question the action of the court in refusing to set aside the verdict because, as alleged, "it did not find whether the accused was guilty of malicious or simply unlawful shooting, nor did it find that the act was done with intent to maim, disfigure, disable or kill," citing *Randall's Case*, 24 Gratt. (65 Va.) 644, and *Jones' Case*, 87 Va. 63, 12 S. E. 226.   These two cases tend strongly to support the proposition for which they are cited.   They have never been expressly overruled, but have not been looked on with favor, and have been by the subsequent decisions of this court strictly confined in their effect to the particular facts upon which they were based.   With-

out undertaking a further comparison or review of these two cases in the light of others upon the same general subject, we deem it sufficient to say that the form of the verdict in the present case was clearly good under the holding of this court in *Hoback's Case*, 28 Gratt. (69 Va.) 922; *Jones' Case*, 31 Gratt. (72 Va.) 830; *Carr's Case*, 134 Va. 656, 114 S. E. 791, and *Lee's Case, post* p. 572, 115 S. E. 671, decided to-day.

The judgment is affirmed.

*Affirmed.*