## Richmond.

### JACKSON GILLS v. COMMONWEALTH.

January 15, 1925.

1. ARGUMENT FOR COUNSEL—*Criminal Case—Reading from Annotation to the Code—Harmless Error—Case at Bar.*—In the instant case, a prosecution for assault with intent to kill, the Commonwealth's attorney read to the jury the note to section 4393 of the Code of 1919. The note contained a correct statement of the law in a murder case and it would not have been error to have given it as an instruction in the instant case.

   *Held:* That if it be conceded that it was error to permit the reading of this statement of the law to the jury, with the understanding that it would be copied by the Commonwealth's attorney at the conclusion of his argument and given to them in writing, the error was rendered harmless when the judge of the trial court later instructed the jury that they could not, under the evidence in the case, convict the accused of *malicious* cutting.

2. ASSAULT AND BATTERY—*Malicious Cutting with Intent to Kill.*—In a prosecution for malicious cutting an officer with intent to kill, whether accused is guilty depends upon whether if the accused had killed the officer he would have been guilty of murder either in the first or second degree.

3. ASSAULT AND BATTERY—*Malicious Cutting with Intent to Kill—Instructions—Reasonable Doubt—Harmless Error—Case at Bar.*—In a prosecution for malicious cutting an officer with an intent to kill, the court instructed that the jury could not, under the evidence, convict the accused of malicious cutting, but either of unlawful cutting and in their discretion fix his punishment at not less than one nor more than five years in the penitentiary, or confine him in jail not exceeding twelve months and fine him not exceeding five hundred dollars, or of assault and battery, the punishment for which is not less than five nor more than five hundred dollars and imprisonment in jail not more than six months, either or both." It was contended that this instruction practically told the jury they must convict accused of unlawful cutting or assault and battery.

   *Held:* That while the instruction, in the absence of an instruction as to reasonable doubt, may have tended to mislead the jury the error was harmless where under the evidence and the law accused could not

have been convicted of any lesser offense than that of which he was convicted.

4. HOMICIDE—*Deadly Weapon—Pocket Knife—Malice Implied.*—In legal contemplation a pocket knife, which may produce death, is a deadly weapon. And where one man wounds another with a deadly weapon, the law, in absence of evidence to the contrary, imputes a malicious intent to the act.

5. HOMICIDE—*Manslaughter—Definition.*—Manslaughter may be defined as the unlawful killing of another without malice, express or implied.

6. DRUNKENNESS—*Crime—Homicide—Voluntary Drunkenness.*—It has long been settled in Virginia, and elsewhere generally, that voluntary drunkenness (as distinguished from settled insanity produced by drink) affords no excuse for crime, save only that where premeditation is a material question the intoxication of the accused may be considered by the jury. As between murder in the first degree and murder in the second degree, voluntary drunkenness may be a legitimate subject of inquiry; but, as between murder in the second degree and manslaughter, it is never material and cannot be considered.

Error to a judgment of the Circuit Court of Campbell county.

*Affirmed.*

The opinion states the case.

*Hester & Hester*, for the plaintiff in error.

*John R. Saunders*, Attorney-General, *Leon M. Bazile*, Assistant Attorney-General, and *Lewis H. Machen*, Assistant Attorney-General, for the Commonwealth.

WEST, J., delivered the opinion of the court.

Jackson Gills, the accused, was indicted for feloniously and maliciously cutting, stabbing and wounding W. P. Pugh, with intent to maim, disfigure, disable and kill him. The jury convicted him of unlawful cutting with the intent stated and fixed his punishment at twelve months in the penitentiary. This writ of error

is to the judgment of the court refusing to set aside the verdict of the jury and grant the accused a new trial.

On December 25, 1923, W. P. Pugh, a deputy sheriff of Campbell county, undertook to arrest the accused for being drunk and disorderly.  Gills struck at and brushed Pugh's face with his fist.  Pugh knocked Gills down and jumped on him and they rolled down an embankment together, where they were pulled apart.  Upon rising, Pugh found blood running down his side and went at once to a physician.  He had been stabbed twice in the left side of his chest underneath his left arm, but the flesh wound was slight.  There were several cuts in his overcoat, one slit being two inches long.  Pugh's pistol, which was strapped beneath his left arm, showed three fresh scratches, or scars, and he felt several blows on his left side as he and Jackson Gills rolled down the embankment together.

Though drunk when arrested, Gills recognized deputy Pugh and called him by name.  Just before Pugh arrived a pocket knife was seen in Jackson Gills' hand.

Accused testified that he went into the country and drank wine and some whiskey which made him crazy drunk; that he did not know he had any trouble with deputy Pugh and had nothing against him.  Two witnesses for the defendant also testified that the accused was crazy drunk at twilight, just before the difficulty occurred.

[1, 2] The accused contends that the court erred: (1) In permitting the Commonwealth's attorney to read to the jury, in his closing argument, the note to section 4393 of the Code; (2) in giving a verbal instruction to the jury, and (3) in refusing to set aside the verdict of the jury and grant him a new trial.

First Assignment.—The note read by the prosecuting attorney was in these words:  "Voluntary immediate

drunkenness is not admissible to disprove malice or reduce the offense to manslaughter. But where, by reason of it, there is wanting that deliberation and premeditation which are necessary to elevate the offense to murder in the first degree, it is properly ranked as murder in the *second degree.*"

This is a correct statement of the law in a murder case and it was not error to give it as an instruction in the instant case. Whether the accused was guilty of *malicious* cutting with intent to kill, etc., depended upon whether if the accused had killed the officer he would have been guilty of murder either in the first or second degree. *Read* v. *Commonwealth,* 22 Gratt. (63 Va.) 937.

If it be conceded that it was error to permit the reading of this statement of the law to the jury, with the understanding that it would be copied by the Commonwealth's attorney at the conclusion of his argument and given to them in writing, the error was rendered harmless when the judge of the trial court later instructed the jury that they could not, under the evidence in the case, convict the accused of *malicious* cutting.

[3] Second Assignment.—The verbal instruction given by the court was as follows: "The jury, under the evidence in the case, cannot convict the accused of malicious cutting, but either of unlawful cutting, and in their discretion fix his punishment at not less than one nor more than five years in the penitentiary, or confine him in jail not exceeding twelve months and fine him not exceeding five hundred dollars, or of assault and battery, the punishment for which is not less than five nor more than five hundred dollars and imprisonment in jail not more than six months, either or both."

No other instructions were asked or given in the case.

It is contended that this instruction told the jury the accused was guilty of unlawful cutting or assault and battery, and, in substance, that they could not return a verdict of not guilty.

The instruction states correctly the punishment for unlawful cutting with intent to kill and for misdemeanor. But, in the form in which it was given, and in the absence of an instruction on reasonable doubt, it may have tended to mislead the jury.

Third Assignment.—This assignment is based upon the refusal of the court to set aside the verdict and grant a new trial.

The evidence shows conclusively that Pugh was cut with a pocket knife while he and the accused were rolling down the embankment together. The accused was the only person who was in a position to do the stabbing at the time it was done, the only one who was seen with a knife, and the only one who had any reason to cut the officer. The accused does not deny that he cut Pugh but simply says he has no recollection of any difficulty with him.

[4] In legal contemplation a pocket knife, which may produce death, is a deadly weapon. And where one man wounds another with a deadly weapon the law, in absence of evidence to the contrary, imputes a malicious intent to the act. 17 Am. and English Ency. L. (2nd Ed.), 413, and cases cited.

[5, 6] Under the decision of the court in the *Read Case, supra,* whether the accused is guilty of unlawful cutting with intent to kill, etc., depends upon whether if he had killed Pugh the offense would have been manslaughter. Manslaughter may be defined as the unlawful killing of another without malice, express or implied. Davis' Criminal Law, 83. The accused struck the first blow which started the combat. The

cutting was his voluntary act and unless it was justifiable or excusable, had death resulted he would have been guilty of voluntary manslaughter. He does not plead justification but claims he should be excused because he was so drunk that he could not form an intent to maim, disfigure, disable or kill.

The accused testified that he voluntarily drank the whiskey and wine which made him drunk. Voluntary drunkenness, where it has not produced permanent insanity, is never an excuse for crime; except, where a party is charged with murder, if it appear that the accused was too drunk to be capable of deliberating and premeditating, then he can be convicted only of murder in the second degree. If a man voluntarily makes himself drunk he must take the consequences of his voluntary act, while drunk, otherwise many crimes would go unpunished.

As said by Lord Hale, when speaking of voluntary drunkenness: "This vice doth deprive a man of his reason and puts many men into a perfect frenzy; but by the laws of England such a person shall have no privileges by his voluntary contracted madness, but shall have the same judgment as if he were in his right senses." With the qualification above stated, the law is the same in this jurisdiction.

In the case of *Boswell* v. *Commonwealth*, 20 Gratt. (61 Va.) 871, the court approves the following statement of the law from the Tennessee court: "As between the two offenses of murder in the second degree and manslaughter, the drunkenness of the offender can form no legitimate matter of inquiry; the killing being voluntary, the offense is necessarily murder in the second degree, unless the provocation were of such a character as would at common law constitute it manslaughter, and for which latter offense a drunken man is equally responsible as a sober one."

In *Johnson* v. *Commonwealth,* 135 Va. 524, 529, 115 S. E. 675, 30 A. L. R. 755, Judge Kelly, speaking for the court, said: "It has long been settled in Virginia, and elsewhere generally, that voluntary drunkenness (as distinguished from settled insanity produced by drink) affords no excuse for crime, save only that where premeditation is a material question the intoxication of the accused may be considered by the jury. As between murder in the first degree and murder in the second degree, voluntary drunkenness may be a legitimate subject of inquiry; but, as between murder in the second degree and manslaughter, it is never material and cannot be considered. Hurst's Ency. of Va. Law, 552; Minor's Syn. Cr. Law, 8; Davis' Crim. Law, 29; *Boswell's Case,* 20 Gratt. (61 Va.) 860; *Willis' Case,* 32 Gratt. (73 Va.) 929; *Longley's Case,* 99 Va. 807, 37 S. E. 339; *State* v. *Robinson,* 20 W. Va. 713, 43 Am. Rep. 799; *State* v. *Kidwell,* 62 W. Va. 466, 59 S. E. 494, 13 L. R. A. (N. S.) 1024; *State* v. *Wilson,* 116 Iowa, 309, 144 N. W. 47, 147 N. W. 739; *State* v. *Morris,* 83 Or. 429, 163 Pac. 567; *Atkins* v. *State,* 119 Tenn. 458, 105 S. W. 353, 13 L. E. A. (N. S.) 1031; *Wilson* v. *State,* 60 N. J. Law 171, 37 Atl. 954, 38 Atl. 428.

Under the evidence and the law applicable to the instant case, the jury could not have properly rendered a verdict convicting the accused of any lesser offense than that of which he was convicted.

In such circumstances the instructions given are immaterial and the possible error pointed out in the oral instruction was harmless.

The judgment will be affirmed.

*Affirmed.*