# Staunton

## MARY LITTLE V. COMMONWEALTH OF VIRGINIA.

September 20, 1934.

Present, All the Justices.

The opinion states the case.

*D. F. Kennedy* and *M. M. Long,* for the plaintiff in error.

*Abram P. Staples, Attorney-General,* and *Edwin H. Gibson, Assistant Attorney-General,* for the Commonwealth.

GREGORY, J., delivered the opinion of the court.

Mary Little was indicted for the murder of her husband, H. W. Little, tried by a jury and convicted of murder in the second degree. Her punishment was fixed at eighteen years in the penitentiary.

Little and his wife had been married about eleven years prior to his death. The tragedy occurred in October, 1932, late in the afternoon, in his home. Besides Little and his wife, there were present at the time of the fatal shooting, Dr. Hutchinson, John Lawson, Z. E. Cress, J. P. Hart, and Emma Glesner. They witnessed the shooting except Emma Glesner, who was out of the room, but in the hall near the front door at the time.

Prior to the shooting a drinking party had been going on and Mrs. Little and some of the others had taken several drinks. Some one suggested that more liquor was needed and Mrs. Little offered to go after it. It was also suggested that she take a pistol for protection. Whereupon she went into another room and obtained her husband's pistol. After securing the pistol she returned to the room where her husband and the others were and she asked her husband to "float a check," to pay for the liquor she intended to purchase. A blank check was not available and she became infuriated and cursed and abused her husband and menaced him with the pistol. It was taken from her by one of those present and upon the direction of her husband who insisted that she would not shoot, the pistol was returned to her. She was still angry and continued to curse and threaten her husband. He again told her that she would not shoot, whereupon she shot him and he died the next day from the wound. After he had fallen to the floor he asked his wife why she had shot him. There is no dispute about the facts narrated.

At the trial the defense was that the defendant was coerced and persuaded by her husband to drink the whiskey which made her so drunk that she did not know what she was doing when the shot was fired. She testified as a witness. She neither denied nor admitted that she fired the fatal shot. All of the other eye-witnesses testified that she shot her husband.

██ The evidence amply supports the verdict of the jury. It clearly shows that the accused was guilty of murder in the second degree.

The court refused to instruct the jury on the crime of manslaughter. It only instructed them as to the crime of murder in the first and second degree. This action is made the basis of an assignment of error.

■ It is not necessary in all homicide cases for the court to instruct the jury as to manslaughter. In the case at bar, as will be seen later, neither the law nor the evidence justified an instruction on that crime. The only offense which the evidence could sustain is murder in the second degree. At the request of the Commonwealth eight instructions were given. They were excepted to by the accused. It is not necessary to copy all of them here. They were the usual instructions given in such cases. Particular objection is urged to instruction 5 which is: "That on a charge of murder malice is presumed from the fact of killing. When the killing is proven and is unaccompanied with circumstances of palliation the burden of disproving malice is thrown upon the accused."

No palliating circumstances appear from the evidence in this case. The testimony discloses a heartless killing without any justification whatever. Little and his wife had been living together happily, so far as the record shows. He was patient with her just before the shooting and did not take offense at the abuse she heaped upon him. He offended her in no way and there was an entire lack of palliation or provocation.

■ The accused contends that she was drunk at the time and incapable of forming any malicious intent to kill. Her testimony on this point is weakened by the testimony of other witnesses, some of whom said she seemed to know what was going on. Just a short time prior to the shooting she prepared supper and a short time after the shooting she hid the pistol. She testified that her husband poured out the whiskey, offered it to her and she drank it; that he did this five times; that she told him she was getting too much but he insisted that she drink and told her he would take care of her if she drank too much. If her own testimony be accepted as true the only reasonable conclusion to

be drawn is that she voluntarily drank the whiskey. She was voluntarily present at the drinking party. She was not forced or coerced to drink. Her husband offered her the whiskey and she drank it. Therefore this case falls within the control of those cases which have settled the law on the subject in this State that voluntary drunkenness affords no excuse for crime. In the case of *Gills* v. *Com.*, 141 Va. 445, 126 S. E. 51, the rule is stated and many authorities cited. A quotation from that case on pages 450 and 451 of 141 Va., 126 S. E. 51, 53, will suffice.

"Voluntary drunkenness, where it has not produced permanent insanity, is never an excuse for crime; except, where a party is charged with murder, if it appear that the accused was too drunk to be capable of deliberating and premeditating, then he can be convicted only of murder in the second degree. If a man voluntarily makes himself drunk he must take the consequences of his voluntary act, while drunk, otherwise many crimes would go unpunished.

"As said by Lord Hale, when speaking of voluntary drunkenness: 'This vice doth deprive a man of his reason and puts many men into a perfect frenzy; but by the laws of England such a person shall have no privileges by his voluntary contracted madness, but shall have the same judgment as if he were in his right senses.' With the qualification above stated, the law is the same in this jurisdiction.

"In the case of *Boswell* v. *Commonwealth*, 20 Gratt. (61 Va.) 871, the court approves the following statement of the law from the Tennessee court [*Pirtle* v. *State*, 9 Humph. 663, 673]: 'As between the two offenses of murder in the second degree and manslaughter, the drunkenness of the offender can form no legitimate matter of inquiry; the killing being voluntary, the offense is necessarily murder in the second degree, unless the provocation were of such a character as would at common law constitute it manslaughter, and for which latter offense a drunken man is equally responsible as a sober one.'

"In *Johnson* v. *Commonwealth*, 135 Va. 524, 529, 115 S. E. 673, 675, 30 A. L. R. 755, Judge Kelly, speaking for the

court, said: 'It has long been settled in Virginia, and elsewhere generally, that voluntary drunkenness (as distinguished from settled insanity produced by drink) affords no excuse for crime, save only that where premeditation is a material question the intoxication of the accused may be considered by the jury. As between murder in the first degree and murder in the second degree, voluntary drunkenness may be a legitimate subject of inquiry; but, as between murder in the second degree and manslaughter, it is never material and cannot be considered. *1 Hurst's Ency. of Va. Law,* 552; *Minor's Syn. Cr. Law,* 8; *Davis' Crim. Law,* 29; *Boswell's Case,* 20 Gratt. (61 Va.) 860; *Willis' Case,* 32 Gratt. (73 Va.) 929; *Longley's Case,* 99 Va. 807, 37 S. E. 339; *State* v. *Robinson,* 20 W. Va. 713, 43 Am. Rep. 799; *State* v. *Kidwell,* 62 W. Va. 466, 59 S. E. 494, 13 L. R. A. (N. S.) 1024; *State* v. *Wilson,* 166 Iowa 309, 144 N. W. 47, 147 N. W. 739; *State* v. *Morris,* 83 Or. 429, 163 Pac. 567; *Atkins* v. *State,* 119 Tenn. 458, 105 S. W. 353, 13 L. R. A. (N. S.) 1031; *Wilson* v. *State,* 60 N. J. Law 171, 37 Atl. 954, 38 Atl. 428.' "

It having been the settled law of this jurisdiction for many years that voluntary drunkenness when interposed as a defense to murder will not be allowed to reduce the offense to manslaughter, the assignment of error touching the court's refusal to instruct the jury on the crime of manslaughter possesses no merit. The court gave the instructions which the evidence and the law justified. The instructions offered by the accused and refused by the court were not applicable. There was no evidence to support them and they did not embody correct rules of law.

When Little was being taken to the hospital some twenty minutes after the shooting, John Barron rode in the ambulance with him and Little was asked "who shot you" and he replied "I don't know." He was then asked "were you shot from behind or in front" and he replied "from behind." John Barron was introduced as a witness and the questions and answers set out were sought to be admitted

in the testimony but the court refused to admit them. This action of the court is assigned as error.

This testimony, if admissible at all, could have served only to refute the uncontradicted testimony of all of the eye-witnesses that Mrs. Little fired the fatal shot. She has never testified that she did not shoot her husband. She has made no denial, though she testified at length. The testimony clearly and unmistakably points to her as the one who fired the shot. Therefore we think the testimony was properly excluded under the circumstances of this case, and that, if it had not been excluded, no different result would have been produced.

The judgment of the trial court is affirmed.

*Affirmed.*