# Richmond

MORTON JORDAN v. COMMONWEALTH OF VIRGINIA.

April 26, 1943.

Record No. 2682.

Present, All the Justices.

The opinion states the case.

*Hodges & Dortch*, for the plaintiff in error.

*Abram P. Staples, Attorney General*, and *Edwin B. Jones, Assistant Attorney General*, for the Commonwealth.

GREGORY, J., delivered the opinion of the court.

The accused was indicted. for rape, tried by a jury and found guilty of attempted rape. His punishment was fixed at five years in the penitentiary. He assails the judgment of the court which carries the finding of the jury into effect.

Mattie Pearl Brown operated a cafe in which she sold beer and wine. The building was of two stories. The cafe was conducted in the lower or ground floor and the upper floor was used as her home. She and her husband and their two children lived in the home. Her mother, Anna Simmons, who was 83 years old, bedridden and helpless, also made her home there.

Approximately at 9:00 P. M. on May 17, 1942, the children of the Browns found the accused lying on Anna Simmons who was in bed. They immediately told their mother, who was downstairs in the cafe, and she went upstairs at once and found the accused on the bed beside her aged mother with his person exposed and her mother uncovered with her gown up above her waist. She dragged the accused from the bed to the head of the stairway and went to get a stick to hit him. Before she returned he had walked or run down the stairs.

Anna Simmons testified that she actually was raped, but she did not identify the accused. He was sufficiently identified by others. The accused was under the influence of liquor or other intoxicants. The extent of his intoxication was described by a number of witnesses. Some said he was "dead drunk". Others said he walked down the stairs and while descending, pulled up his breeches and adjusted his belt. His shirt-tail was out. When arrested between

1:30 and 2:00 A. M. the next morning, approximately five hours later, he was very drunk.

While counsel for the defendant was arguing to the jury that the defendant was so drunk he was unconscious of his conduct and incapable of possessing the intent to engage in sexual intercourse, the attorney for the Commonwealth interposed an objection on the ground that to establish the crime of attempted rape, it was not necessary to prove an intent. The trial court sustained the objection using this language: "Mr. Hodges, the jury is hereby instructed that the crime of attempt to commit rape does not require any specific intent, as a person is presumed to intend the natural consequences of his act, and the objection is sustained".

Counsel for the accused challenged this ruling of the court and ground their attack upon the proposition that it is necessary to prove a specific intent before one may be convicted of an attempted rape. They concede, however, that in order to constitute a consummated crime, as distinguished from an attempt, a specific intent need not be proven. A man is presumed to intend the natural consequences of his act. However, they contend that this principle only has reference to acts actually committed and not to those only contemplated.

Counsel argued below and argues here that the drunkenness of the defendant was so complete that it alone absolutely negatived the existence of any intent upon his part to commit rape or to attempt to commit it. We cannot agree that the evidence disclosed his drunken condition to such an extent. The jury reasonably could have concluded from the testimony of the prosecutrix and her daughter, Mattie Pearl Brown, that he was not too drunk to possess an intent to commit rape. His conversation with the prosecutrix as detailed by her tends to show that he not only knew what he was doing but it also discloses that he actually had the intent to commit rape. When he came into the room he told the prosecutrix, according to her testimony, what he wanted and what he was going to have. This testi-

mony is not contradicted and it alone was sufficient, if believed, to establish the intent.

The existence of his intent is also proven by his conduct, if the jury accepted the testimony offered by the Commonwealth showing the details of his attack upon the prosecutrix. The jury evidently accepted that testimony and it was justified in doing so.

The evidence of the Commonwealth disclosed that the accused went into the bedroom of the aged and helpless prosecutrix, who was in bed; that he got in bed with her; that he was on top of her, and that his person was exposed and her gown above her hips.

There is evidence that the accused was very drunk a short time after the attack but there was no evidence that he was too drunk to know what he was about immediately before or at the time of the attack except his statement that he was not conscious of being in the bedroom of the prosecutrix.

It was in the light of this evidence the court told the jury that a specific intent to commit rape was not essential to the proof of the crime of attempted rape and that a person is presumed to intend the natural consequences of his act. The ruling, of course, was applicable to the particular facts of this case, and when it is applied to those facts it was not improper. The conduct of the accused and his language at the time carried with them proof of a specific intent to commit rape. No other purpose or aim could be found to exist.

Voluntary drunkenness is not an excuse for crime or attempts to commit crime. If it were, a large number of criminals would go free because it is common knowledge that many crimes are committed by those under the influence of intoxicants. In *Johnson* v. *Commonwealth*, 135 Va. 524, 115 S. E. 673, 30 A. L. R. 755, this court approved the statement that drunkenness may have even produced temporary insanity during the existence of which the criminal act was committed and yet it would afford no excuse.

See also *Little* v. *Commonwealth*, 163 Va. 1020, 175 S. E. 767.

The Commonwealth's attorney argued that alcohol excites the passions of men and women and "they are worse then in sexual regards than at any other time". Upon objection to this argument, the court remarked that "It is based on reason and common sense. Your objection is overruled." Later, the court instructed the jury to disregard its remark.

■ There was no evidence that men and women are more passionate when under the influence of liquor and the argument was therefore improper. The remark of the court was also improper but it is not apparent that it prejudiced the accused. The direction to the jury to ignore it eliminated any improper influence the remark might have had.

The wife of the accused was asked if she thought he would have been capable of engaging in sexual intercourse to which she replied that "He could not. He was so drunk he did not know anything and he could not do anything for himself."

This evidence was offered on behalf of the accused but upon objection it was not admitted.

■ The attack was made about 9:00 P. M. and it was at least 9:30 before the wife saw him. It is quite possible he may have been unconscious from intoxicants when he arrived at home and his wife observed his condition and yet he might have been physically capable of committing the crime of rape at 9:00 P. M. His complete intoxication a half hour afterwards would not be absolute proof of a like condition at the time it was actually committed. He might have become beastly drunk in thirty minutes. This evidence did not refer to the time of the commission of the crime. He was not too drunk and helpless to go up the steps, get in bed with the prosecutrix, tell her what he was going to do and after being discovered and dragged to the head of the stairs, walk or run down them. His condition afterwards was not material.

We are of opinion that the verdict is supported by the evidence and that the judgment should be affirmed.

*Affirmed.*