# Richmond

## WILLIAM GREGGS BRENAN v. COMMONWEALTH OF VIRGINIA.

April 23, 1945.

Record No. 2954.

Present, All the Justices.

The opinion states the case.

*Herman A. Sacks,* for the plaintiff in error.

*Abram P. Staples, Attorney General,* and *M. Ray Doubles, Assistant Attorney General,* for the Commonwealth.

GREGORY, J., delivered the opinion of the court.

The petitioner, William Greggs Brenan, was convicted upon a charge of robbery, and sentenced to five years in the penitentiary. The facts are not in dispute, and are substantially as follows: The accused, a young man twenty-two years of age, left his home between 6:30 and 7:00 o'clock on the evening of July 22, 1944, taking with him $100 in cash and a check for $207, payable to himself and made by his mother. Later he met Mr. Ford, and they were together for several hours, during which time they drank some beer. They separated at Tegg's Barbecue about 10 o'clock P. M. At this time the accused had with him nearly four quarts of whiskey.

At approximately 12 o'clock that night one A. G. Kinsey, the victim of the robbery, was driving a taxicab on the Sewells Point Road in Norfolk, about two blocks west of Granby Street, close by Tegg's Barbecue. The accused was walking on the Sewells Point road, and he stopped Kinsey and requested that the latter drive him to his home at No. 815 Holt Street. He thereupon boarded the taxicab and when they arrived at the intersection of Granby street and Sewells Point road, where the cab was stopped on ac-

count of a red traffic light, the accused put his right hand inside of his coat and stuck it in Kinsey's right side and at the same time said that it was a "stickup". He then told Kinsey to drive straight ahead which Kinsey did for some little distance, when he was told by the accused to pull to the curb and was ordered to hand over his money. Kinsey handed the accused the money, which was refused, but the accused ordered Kinsey to lay the money on the dash board, whereupon the accused took the money, amounting to $16.-25, from the dash board.

Kinsey reported the occurrence to the Norfolk Police Department and in a short time police officers were on the scene, and they arrested the accused. When he was searched the $16.25 in money was found on his person. The accused was then carried to the police station where he admitted having taken the money from the taxi driver. He exclaimed: "Yes, I robbed him. Give me fifteen or twenty years. What in the hell do I care?"

On the same night very soon after the robbery, but before his arrest, the accused was seen in Denby Park. In that neighborhood he approached a Mrs. Edwards and a Mrs. Richardson, who were sitting in the former's automobile which was parked in the driveway next to her house. The lights in the house were burning and the front door was open. When Mrs. Edwards first saw the accused he was coming up the street limping. He approached the automobile and placed his hand in his pocket and said "this is it". He later said "this is the real thing". By that time Mrs. Richardson had thrown her pocket book out of the car, and when the accused observed her movement he said "Hey, sit where you are. Don't move". Mrs. Richardson screamed and Mrs. Edwards' son and daughter ran out of the house. When the accused saw Mrs. Edwards' son and daughter he said "it is a good thing I love women". He then ran down the street and stopped under a street light. Later he came back to where Mrs. Edwards and Mrs. Richardson had been and told persons standing there that he came up to see "what was the trouble". He used profanity and ordered

Mrs. Edwards' daughter to go back into the house. He then left and went under the same street light and stopped. A Mr. Mercer, who resided close by, saw the accused standing under the street light. He asked Mr. Mercer for a cigarette. He took a check from his pocket and tore it up and asked Mr. Mercer what he wanted to know. Mr. Mercer told him he had heard about the attempted holdup of Mrs. Edwards, whereupon the accused told Mr. Mercer that he (the accused) "was the fellow". He also told Mercer that he had him (Mercer) covered, and to stand where he was. He did not take anything from Mercer.

When arrested one of the police officers testified that the accused had been drinking but that he was not drunk, and that judging from what he said and did he would say that the accused was a person who knew the difference between right and wrong. The accused did not take the stand.

It was shown that the accused had been in naval service in Sicily, and as a result of his service had become highly nervous. It was also shown that he had been in a serious automobile accident in November, 1943, which resulted in a head injury as well as other injuries, causing him to be hospitalized for about six months.

The theory of the defense was that the accused was temporarily insane at the time of the robbery, or that he was too drunk to entertain the specific intent to commit robbery.

The trial court submitted to the jury the question of the accused's insanity at the time of the commission of the offense under proper instructions, but refused to submit to the jury the question as to whether or not he was too drunk to entertain the specific intent to commit robbery, upon the ground that there was no evidence that he was drunk at the time.

The only evidence of the insanity of the accused was the testimony of the unusual manner in which he acted under the circumstances. It is said that no sane man would have conducted himself as he did, and that he was bound to have been temporarily deranged or else too drunk to know what he was doing.

The court instructed the jury that if they believed from the evidence that at the time the accused took the money from the complaining witness he was insane and did not, by reason of his insanity, know what he was doing, they should find him not guilty. This instruction clearly left the question to the jury. It was one entirely within their province. Certainly we could not say as a matter of law, from the evidence in the case, that the accused was insane at the time he committed the robbery.

The defendant offered an instruction to the effect that if the jury believed from the evidence that at the time the accused took the money from the complaining witness he was so drunk he could not entertain an intention to do right or wrong then they could not convict him of robbery. The court was of opinion that there was no evidence to support this instruction. In this conclusion we concur.

Even if there had been evidence of drunkenness, under the decisions of this court, it would have been no excuse for the crime. See *Johnson* v. *Commonwealth*, 135 Va. 524, 115 S. E. 673, 30 A. L. R. 755, and *Jordan* v. *Commonwealth*, 181 Va. 490, 25 S. E. (2d) 249.

The judgment should be affirmed.

*Affirmed.*