## 𝔕𝔦𝔠𝔥𝔪𝔬𝔫𝔡

ALVIN JUNIOR CHITTUM V. COMMONWEALTH OF VIRGINIA.

June 15, 1970.

Record Nos. 7196, 7197 and 7198.

Present, All the Justices.

*Harlin Perrin*, for plaintiff in error in Record Nos. 7196, 7197 and 7198.

*A. R. Woodroof, Assistant Attorney General (Robert Y. Button, Attorney General,* on brief), for defendant in error in Record Nos. 7196, 7197 and 7198.

SNEAD, C.J., delivered the opinion of the court.

Alvin Junior Chittum, defendant, was tried on pleas of not guilty on five separate indictments—two for kidnapping, two for attempted murder, and one for attempted rape. By agreement the defendant was tried on all indictments jointly. The jury acquitted defendant on the two indictments charging attempted murder, but found him guilty on the other three.

On Indictment No. 1 (Record No. 7196) charging defendant with kidnapping Lisa Dell Tench, defendant's punishment was fixed at confinement in the State Penitentiary for a term of two years and six months. On Indictment No. 2 (Record No. 7197) charging defendant with kidnapping Donald H. McBroom, the same penalty was fixed, and on Indictment No. 3 (Record No. 7198) charging defendant with attempted rape of Lisa Dell Tench, defendant's punishment was fixed at confinement for a term of eight years. The trial court sentenced defendant in accordance with the verdicts, and we granted him writs of error to these judgments.

The question presented under defendant's first assignment of error is whether the evidence is sufficient to sustain the convictions.

The record reveals that at about 1:00 o'clock on the morning of August 6, 1968, Donald McBroom, age eighteen, and his sixteen-year-old cousin, Lisa Dell Tench, left the Red Garter, a night club in Roanoke county, and proceeded to McBroom's car in the parking lot. As they entered the vehicle they were approached by a man later identified as Alvin Chittum, the defendant.

Lisa Tench testified that Chittum came to her side of the car and asked the whereabouts of someone named Bill. She told him she did not know Bill. The inquiry was repeated "three or four times". Chittum then went around the front of the car to the driver's side and made the same inquiry of McBroom. Both Lisa Tench and McBroom stated that Chittum appeared to be intoxicated and that his words were "mumbled" although intelligible.

Both witnesses testified that Chittum then pulled a pistol from his pocket and, after some indecision on the driving arrangements, got in the back seat and directed McBroom to drive down Route 220 because he had to "get out of town".

McBroom drove down Route 220 for a distance of about two miles until Chittum directed him to turn off on Sleepy Hollow Road. Immediately upon turning onto Sleepy Hollow, McBroom was told to turn left onto a "two-track gravel road" that ended at some private driveways. Chittum, who was on the back seat with the gun in his hand resting on his knee, directed McBroom to stop and get out of the car.

McBroom stated that Chittum said he "wanted to ask the girl a few questions". McBroom attempted unsuccessfully to bargain with Chittum, offering him the car and money in return for the girl's safety.

Chittum ordered McBroom to lie down near Sleepy Hollow Road and McBroom followed these directions, lying face down on the ground about thirty yards from the car. He saw Chittum get out of the left rear door and open the right front door.

Lisa Tench testified that as Chittum opened the right front door she "slid" over to the left side of the car. He knelt on the seat with the pistol in his right hand. He "got a hold of one of my arms, my left arm, and pointed the gun at me and he said: Lay down. And I told him that I was sorry, I didn't know how. * * * And then he cocked the gun and said: Put your ass right here, and pointed to a point on the seat. * * * I told him that I was a virgin and tried to dissuade him. And he said that he would be gentle."

At this point Chittum got out of the car and shouted to McBroom not to come near or he would shoot. While Chittum was standing outside the car Lisa Tench slipped out the right side behind him, ran around to the other side of the car and crouched. When Chittum discovered that she was gone he shouted to McBroom: "Tell her to stand up, or else I'll shoot her". Lisa Tench testified: "At that point I got up, * * * he started around the car at the back of the car toward me, and I was backing away, and he put the gun in his pocket, and he was starting to unzip his pants, and then he stumbled * * * ".

Lisa Tench then turned her back toward Chittum, heard something drop, assumed it was the gun, yelled to McBroom that Chittum had dropped the gun and began to run. As the couple ran to the highway one or two shots were fired by Chittum. They made good their escape and notified the police, giving a general description of Chittum.

Chittum's car was discovered in the parking lot of the Red Garter

night club. A police officer was dispatched to Chittum's home and Chittum arrived shortly after the officer. The police drove Chittum to the Red Garter where McBroom and Lisa Tench had also been taken. They positively identified Chittum as the man who had entered their car at gun point.

Glenn Doss, an acquaintance of Chittum, testified that he and some friends saw Chittum walking down Route 220 at a point near Sleepy Hollow Road and drove him home.

Chittum testified that he left his television repair shop and went to drink some beer. He ran out of money, returned to his shop, took about $1,000 and left to drink more beer. He stated he owned a .22 calibre pistol that he kept in the glove compartment of his car. He recalled drinking beer at several places, the last of which was the Red Garter. Although he was able to recount some incidents there he could not remember leaving and remembered nothing until the time he woke up in Doss' car.

Code, § 18.1-36 provides: "Abduction and kidnapping defined.— Any person, who, by force, intimidation or deception, and without legal justification or excuse, seizes, takes, transports, detains or secretes the person of another, with the intent to deprive such other person of his personal liberty or to withhold or conceal him from any other person, authority or institution lawfully entitled to his charge, shall be deemed guilty of 'abduction'; but the provisions of this section shall not apply to any law enforcement officer in the performance of his duty. The terms 'abduction' and 'kidnapping' shall be synonymous in this Code."

There can be no doubt that the incidents testified to by the complaining witnesses come within this definition. Chittum was positively identified by both witnesses. Clearly, the evidence was sufficient to sustain the verdicts on abduction.

We proceed now to a consideration of the sufficiency of the evidence to convict defendant of attempted rape.

" 'We have frequently pointed out that an attempt to commit a crime is composed of two elements: (1) The intent to commit it; and (2) the direct, ineffectual act done toward its commission which must reach far enough toward the accomplishment of the desired result to amount to the commencement of the consummation. [Citing authorities].' " *Howard* v. *Commonwealth*, 207 Va. 222, 227, 148 S.E.2d 800, 804 (1966). Defendant argues that the Commonwealth's evidence falls short on both elements.

"Intent is the purpose formed in a person's mind and may be, and frequently is, shown by circumstances. It is a state of mind which may be proved by a person's conduct or by his statements. *Johnson* v. *Commonwealth*, 209 Va. 291, 295, 163 S.E.2d 570, 574; *Howard* v. *Commonwealth*, 207 Va. 222, 228, 148 S.E.2d 800, 804." *Barrett* v. *Commonwealth*, 210 Va. 153, 156, 169 S.E.2d 449, 451 (1969).

The conduct and statements of defendant as presented by the record are that he forced Lisa Tench and McBroom to drive to an unpaved road early in the morning; ordered McBroom out of the car, directing him to lie down at some distance from it; that defendant got in the front seat of the car, held the girl by the arm and pointed a cocked pistol at her. He ordered her to lie down on the seat; when she protested that she was a virgin he stated he would "be gentle". And while defendant pursued her as she was attempting to escape she testified that he was unzipping his pants.

From this conduct and discourse the jury was justified in concluding that defendant's intention was, by use of the weapon, to force Lisa Tench to have intercourse with him against her will.

Chittum also maintains that the evidence fails to establish that he committed an overt act which would amount to the commencement of the consummation of rape.

"It is impossible to formulate a rule which will be a definite and unbending guide in determining what acts constitute preparation and what acts amount to legal attempts." *Granberry* v. *Commonwealth*, 184 Va. 674, 678, 36 S.E.2d 547, 548 (1946). However, certain established principles may be applied. In addition to the requisite intent there must be "some direct act towards its consummation", but "[i]t need not be the last proximate act to the consummation of the crime in contemplation * * *." (Ibid.)

In *Granberry*, an appeal from a conviction of attempted rape, defendant attacked the sufficiency of the evidence. The facts relied on to establish the necessary overt act were somewhat similar to those in the case at bar. The evidence showed that the defendant forced the prosecutrix into his car at knife point and drove to the rear of a building. He and the girl got out of the car and went to a nearby vacant lot covered with weeds and bushes. The prosecutrix was told to lie down, pull up her dress and take down her pants. While accused was kneeling, engaged in unbuttoning his own pants, she jumped up and ran away. We held that "[w]hile the overt acts of the accused, detailed in the evidence, were not the last proximate

acts necessary to the consummation of the crime, they were direct overt acts well calculated to accomplish the result intended." (Ibid.) It was concluded that the evidence was sufficient to establish an attempt. The facts in the case at bar, in our view, support a similar conclusion. Accordingly, we hold that the evidence was sufficient to sustain the conviction of attempted rape.

■ Further, the defendant asserts in his assignments of error that the court erred "in failing and refusing to instruct the jury" that he "could be found guilty of a lesser offense than that of attempted rape, if they so believed from the evidence."

In the case at bar, the record shows that defendant neither offered nor requested an instruction to the effect that he could be found guilty of assault, a lesser offense. The question was initially raised by Chittum in his assignments of error. It came too late. By failing to offer or request such an instruction he waived any right he may have had to it. *Roy* v. *Commonwealth*, 191 Va. 722, 728, 62 S.E.2d 902, 904-05 (1951); *Crider* v. *Commonwealth*, 206 Va. 574, 578, 145 S.E.2d 222, 225 (1965).

■ Finally, Chittum challenges the correctness of the court's action in granting Instruction No. 8 and in refusing Instruction No. A1. Instruction No. 8 reads:

"The Court instructs the Jury that voluntary drunkenness is no excuse for crime. A person cannot voluntarily make himself so drunk as to become on that account irresponsible for his conduct during such drunkenness. He may be perfectly unconscious of what he does and yet be responsible. He may be incapable of express malice but the law imputes malice in such a case from the nature of the instrument used, the absence of provocation and other circumstances under which the act was done."

This language is taken from *Johnson* v. *Commonwealth*, 135 Va. 524, 527, 115 S.E. 673, 674 (1923), and has been approved as a correct statement of the law in subsequent cases. See *Little* v. *Commonwealth*, 163 Va. 1020, 1024-25, 175 S.E. 767, 769 (1934); *Jordan* v. *Commonwealth*, 181 Va. 490, 494, 25 S.E.2d 249, 250 (1943). We hold that it was not error to grant Instruction No. 8.

But defendant argues that since Instruction No. 8 was given, it was error to refuse Instruction No. A1. It reads:

"The Court instructs the Jury that, in order to convict the accused, the Commonwealth must prove beyond reasonable doubt every fact essential to the establishment of the guilt of the accused, and

every element of the offense alleged; that a vital element of this charge is that the accused did make an assault upon one Lisa Dell Tench, and did attempt to ravish and carnally know her against her will, and that attempt to ravish and carnally know the said Lisa Dell Tench involves an intent on the part of the offender of a specific intent; and that if the Jury believe from all of the evidence that the accused did commit the offense charged, yet if you further believe from all of the evidence that the accused did not, by reason of drink, have the mental capacity and did not have control of his will, so as to entertain this specific intent, then the Jury must acquit the accused."

The issue presented by this instruction is whether a defendant is entitled to have the jury instructed to the effect that when a specific intent is a necessary element of the crime charged, the drunkenness of defendant, although voluntary, may be considered in determining whether he was capable of forming or entertaining that requisite intent.

Although a majority of jurisdictions would allow such an instruction, we have held in *Gills* v. *Commonwealth*, 141 Va. 445, 450, 126 S.E. 51, 53 (1925), that "Voluntary drunkenness, where it has not produced permanent insanity, is *never* an excuse for crime; *except*, where a party is charged with murder, if it appear that the accused was too drunk to be capable of deliberating and premeditating, then he can be convicted only of murder in the second degree." (Italics supplied.) See also *Little* v. *Commonwealth, supra.* We think this to be the better rule.

In *Brenan* v. *Commonwealth*, 183 Va. 846, 850, 33 S.E.2d 639, 640 (1945), a prosecution for robbery, an instruction was offered on the theory that if defendant was too drunk to entertain the specific intent to rob he could not be found guilty. We agreed with the trial court that there was no evidence to support the instruction and said, "Even if there had been evidence of drunkenness, under the decisions of this court, it would have been no excuse for the crime." We hold that the court did not err in refusing Instruction A1, and anything we said in *Clark* v. *Commonwealth*, 135 Va. 490, 115 S.E. 704 (1923) that might conflict with this opinion is hereby overruled.

For the reasons stated, the judgments appealed from are

*Affirmed.*