# Richmond

## HARRY DRINKARD V. COMMONWEALTH OF VIRGINIA.

January 16, 1936.

Present, Campbell, C. J., and Holt, Hudgins, Gregory and
Eggleston, JJ.

The opinion states the case.

*Hester & Hester,* for the plaintiff in error.

*Abram P. Staples, Attorney-General,* and *Edwin H. Gibson, Assistant Attorney-General,* for the Commonwealth.

HUDGINS, J., delivered the opinion of the court.

The accused was convicted of malicious wounding, and sentenced to confinement in the penitentiary for a period of five years.

The facts are brief, and except in one or two particulars, are undisputed. The accused on Saturday night,

March 16, 1935, with two companions entered a sandwich shop in the city of Lynchburg, where there were fifteen or more other people. Soon after entering the restaurant, the accused, without the slightest provocation, slapped a girl, Nina Chambers, and then knocked her down with a pistol. Immediately thereafter, as Orville Woodson was walking out the rear door, the accused shot him. The bullet entered one of his legs from the rear, near the hip, and stopped just under the skin in the front part of the leg above the knee. Woodson continued out the back door to an alley or street, and fell. Later he was taken to a hospital, where he remained some time. The police officer on duty in that section of the city saw the accused back out of the restaurant with a pistol in his hand making threatening gestures toward the people in the shop. When the accused turned and saw the officer approaching, he immediately dropped the pistol underneath the running board of a parked automobile, and called the policeman whom he knew, by name. The accused was arrested by the officer, and while in custody he struck Bernard Inge, a young man, who happened to be near the scene.

The accused does not deny any of the above facts, but contends that he spent the previous night (Friday) gambling, and on arriving home about 7 A. M. Saturday morning, in order to relieve his headache, he took a headache powder, and from time to time during the day he took other powders, and drank whiskey and gin. How many powders or how much intoxicating liquor he had taken during the twenty-four hours previous to the shooting he was unable, or unwilling, to say. He testified that he remembered going to a pawn shop about 2 P. M., redeeming his pistol with money he won at the gambling table, and that thereafter he bought gin, and with others drank it. He did not recall anything that happened in the restaurant. He did not know the girl he slapped and struck with the pistol, nor had he ever seen Orville Woodson previous to the night he shot him.

Dr. J. W. Devine testified that the bullet in passing through the fleshy part of Woodson's leg, possibly struck or grazed the bone, thereby causing an injury to the nerve. The full extent of the injury could not be ascertained until an operation had been performed. At the time of the trial Woodson could not, or had had difficulty in raising the injured leg.

There was some evidence tending to show that the pistol was accidently discharged, but as this issue was properly submitted to the jury, no further reference to this phase of the case is deemed necessary.

The accused contends that his mental condition, brought about by his voluntary acts in taking dope and drinking intoxicating liquors, was such that at the time he shot Woodson he was unable to entertain the specific intent to kill.

The principles of law governing this question have been stated and restated many times by this court. In *Read's Case* (*Read* v. *Com.*), 22 Gratt. (63 Va.) 924, 937, Judge Moncure speaking for the court said: "Whether the the prisoner was guilty of *malicious* shooting with intent to kill or not, depends entirely upon the question whether, if the prisoner had killed Merriman, instead of only wounding him (with intent to kill, etc.), the offense would have been murder, either in the first or second degree—it matters not which—or would have been only manslaughter, or homicide in self-defense. If it would have been murder, then the prisoner was guilty of the offense of *malicious* shooting with intent to kill, of which he was convicted. If it would not, then he was not guilty of that offense, however guilty he might have been of another offense, as of *unlawful* shooting with intent to kill, etc., * * * I will only say on this subject that every unlawful homicide must be either murder or manslaughter; and whether it be one or the other depends alone upon whether the party who perpetrated the act did it with malice or not—malice either express or implied. That

one word *malice* is the touchstone by which the grade of the offense must be determined."

See *Boswell's Case* (*Boswell* v. *Com.*), 20 Gratt. (61 Va.) 860; *Willis' Case* (*Willis* v. *Com.*), 32 Gratt. (73 Va.) 929.

The identical question was before this court in *Johnson* v. *Commonwealth,* 135 Va. 524, at page 529, 115 S. E. 673, at page 675, 30 A. L. R. 755, in which Judge Kelly, in speaking to the point, said: "It has long been settled in Virginia, and elsewhere generally, that voluntary drunkenness (as distinguished from settled insanity produced by drink) affords no excuse for crime, save only that where premeditation is a material question the intoxication of the accused may be considered by the jury. As between murder in the first degree and murder in the second degree, voluntary drunkenness may be a legitimate subject of inquiry, but as between murder in the second degree and manslaughter it is never material and cannot be considered."

The accused contends that on the question of intent, the case is controlled by the doctrine stated in *Merritt* v. *Commonwealth,* 164 Va. 653, 180 S. E. 395, and in *Thacker* v. *Commonwealth,* 134 Va. 767, 114 S. E. 504. The charge in each of those cases was an attempt to kill or murder. In the former, the act alleged was pointing a pistol with the intent to kill. In the latter case, the act alleged was shooting with intent to kill. It was proven that the accused shot at a light with no intent to shoot at any particular person, and in fact no one was hit by the three bullets fired. It was held that in such cases the specific intent to commit the full crime must be charged and proven, thereby imparting to the act done, a special culpability. The distinction between the two classes of crimes was specifically pointed out by Judge Kelly in *Johnson* v. *Commonwealth, supra,* 135 Va. 524, page 529, 115 S. E. 673, 675, 30 A. L. R. 755: "The principles of law, therefore, governing the effect of intoxication upon the defendant's guilt are the same as those which apply in homicide cases. We are not concerned

here with the law as applied to cases in which a specific intent is an essential element of the offense charged. It is generally said that in contemplation of law no specific intent is essential to the crime of murder in the second degree, but in this case it is sufficient to say that where one man wounds another with a deadly weapon, the law imputes a malicious intent to the act. 17 Am. & Eng. Ency. L. (2d Ed.) 413, and cases cited, and also authorities *infra*. It is quite true that murder in the first degree involves a premeditated purpose of which an intoxicated person may be incapable, but this distinction is not material to the issues arising under the instructions here. We speak in this case as if we were dealing with a conviction of murder in the second degree."

Judge Gregory in *Little* v. *Commonwealth*, 163 Va. 1020, 1025, 175 S. E. 767, 769, said: "It having been the settled law of this jurisdiction for many years that voluntary drunkenness when interposed as a defense to murder will not be allowed to reduce the offense to manslaughter, * * *."

There is no reversible error in the statement of these principles, either in the oral instructions given by the court of its own motion, or in the written instructions given at the request of the Commonwealth and the accused. The accused, however, contends that the court committed reversible error in giving, without request, a lengthy oral charge covering every phase of the evidence introduced by the Commonwealth and the accused.

The recognized practice in this State is for the court to give written instructions requested by the litigants, when satisfied that they correctly state the law applicable to the evidence, and to give oral instructions only in the event such instructions are requested or to clarify a general statement contained in the written instruction.

A typical example of the latter statement is found in the record here. The accused requested Instruction "B," reading:

"B. The court further instructs the jury that the Commonwealth must prove beyond a reasonable doubt that the defendant shot Woodson with intent to maim, disfigure, disable, or kill, before the defendant can be found guilty of malicious or unlawful shooting as charged in the indictment."

While this statement is correct, so far as it goes, without more, it tends to confuse rather than to inform. It was clarified by the following oral instruction:

"In that connection, of course, intent may be presumed from an act. If you believe in a case that a man without any purpose to shoot, simply holding a pistol in his hand, and somebody else without the assistance pulled the trigger, he would not be guilty of the offense of unlawful or felonious shooting; if, on the other hand, he pulled the trigger with an intent to shoot somebody, intoxication either from drugs or alcohol would not be excusable at all."

To this extent we approve the giving of oral instructions without request from either side. While in this case we find no reversible error in the oral charge given to the jury, we deem it advisable to say that we do not approve of the giving of both oral and written instructions covering the same identical principle. The written instructions are before the jury when they are deliberating upon the facts, but the jury are dependent upon memory as to what the court has said in an oral instruction. Not only that, under the rules of this court, it is incumbent upon the litigant, not only to except to an instruction to which he objects, but he must state his reasons therefor, before he is in a position to urge the objection in this court. When the instructions are written and before him, it is comparatively easy to give reasons for his objection. This should be done in the absence of the jury. If the trial judge gives an oral instruction, it is more difficult, especially if it is long, as it was in this case, for the attorney to give the reasons for his objec-

tion, and then he is forced to state his objections and his reasons therefor, in the presence of the jury, or else move that the jury be excluded while the court and the attorneys reach an agreement on the exact language used by the court, and then note the reasons for the objections. In the absence of a court reporter, this is not always easy. In this case the record shows that even the reporter failed to get every statement made by the trial court in his oral charge.

As stated, while we do not find any reversible error in the oral charge, we think the practice in the State should be uniform, and no change should be made without giving the bar full opportunity to be heard thereon.

■ Assignments of error Nos. 5 to 12, inclusive, are based upon the admission of testimony over the objection of the accused. Four of the assignments mentioned are grounded upon admission of testimony showing that just before Woodson was shot, the accused made an unprovoked attack with a pistol, used as a club, upon Nina Chambers, and immediately after the shooting and his arrest, he struck Bernard Inge. Just how much time elapsed between the incidents mentioned is not clearly stated in the record. The incidents appear to follow one another so closely as to be a part of the *res gestae,* but even if the testimony to which objection was made was not a part of the *res gestae,* it was clearly admissible to show the mental attitude of the accused immediately preceding, and immediately subsequent to the shooting.

■ The court over the objection of the accused permitted two police officers to testify as to certain statements made to them by Woodson, not in the presence of the accused. If this evidence was admissible at all, it was admissible only for the purpose of impeaching Woodson, but as he was a witness for the Commonwealth it should have been admitted only in the event it developed that Woodson became an adverse witness. The Commonwealth's attorney did make this claim, but the court did

not limit the scope of the testimony. Under the circumstances, the admission of this testimony was error, but as the hearsay testimony did not vary to any appreciable extent the account of the shooting, as related by other witnesses for the Commonwealth, the error was harmless.

The other exceptions to the ruling of the trial court are not well taken, and are not of sufficient importance to merit discussion. For the reasons stated, the judgment of the lower court is affirmed.

*Affirmed.*