## Richmond

### Joe Lewis Hatcher v. Commonwealth of Virginia

March 3, 1978.

Record No. 770563.

Present: I'Anson, C.J., Carrico, Harrison, Cochran, Harman and Compton, JJ.

*John W. Swezey (Ford & Swezey,* on brief) for plaintiff in error.

*Thomas D. Bagwell, Assistant Attorney General (Anthony F. Troy, Attorney General,* on brief), for defendant in error.

I'ANSON, C.J., delivered the opinion of the Court.

Defendant, Joe Lewis Hatcher, was convicted by a jury of murder in the first degree, and he was sentenced in accordance with the jury's verdict to fifty years in the penitentiary.

The sole question presented on this appeal is whether the trial court erred in refusing instruction "M" which would have told the jury that if they believed from the evidence that the defendant was in such a degree of drunkenness as to render him incapable of forming a wilful, deliberate and premeditated purpose or intent to kill the deceased, then they could not find him guilty of murder in the first degree.

The Commonwealth's evidence shows that late in the afternoon of June 16, 1976, Ruby Speaks, defendant, and defendant's father, Philmore Hatcher, met in Mt. Airy, North Carolina. The defendant drove Ruby's automobile to a "nip joint" outside of Mt. Airy because she said she was too drunk to drive. There they each had a drink of whiskey. Defendant then drove the car to Stuart, Patrick County, Virginia. While en route they saw Jesse Robert Hill alongside a road in Patrick County, and they gave him a ride to his home. Upon arrival at Hill's home, they all remained in the car and drank some of the whiskey Hill had with him when he entered the car. They decided they needed some more whiskey; Hill agreed to pay for it and to buy gasoline for the car. On the way to get the whiskey and gas, Hill and defendant engaged in an argument about who was going to pay for the whiskey and gas. Defendant became angry, stopped the car, pulled Hill out, knocked him down in the road, and then proceeded to drive the car over him three or four times. Ruby and Philmore tried to stop the defendant from running over Hill, but defendant told Ruby "to shut [her] mouth and if [she] didn't [she'd] get the same thing." A bloodstained knife was found near decedent's body.

After driving the automobile over decedent's body, defendant drove to Willie Carter's home which was only a short distance away. Defendant told Carter that he had "stobbed" [sic] a man and had run over him with his automobile. Carter said he thought defendant was merely joking and "it seemed like

[defendant] had been drinking [but] not — not too bad." When defendant was leaving Carter's home, the automobile slipped off the "narrow" road into a ditch, and one of Carter's sons helped get the car out of the ditch. Defendant then drove to a service station, changed a tire, washed the car, and returned to Mt. Airy.

The medical evidence revealed that the decedent had been crushed to death. The medical examiner was unable to determine whether decedent had been stabbed because of the crushing injuries to his body. Decedent's blood alcohol content was .28%. Oil and grease were found on decedent's clothing, and particles of hair removed from the underside of the automobile were identified as those of the decedent.

Defendant, testifying as the only witness in his behalf, stated that he had two drinks of whiskey and a bottle of beer before leaving Mt. Airy; that Ruby drove her automobile the entire time they were together, except when he backed it out of the ditch; that Hill was carrying a fifth and almost a full pint of whiskey when he got in their automobile; that they all drank some of Hill's whiskey; that he [defendant] suggested they needed some more whiskey and when they were on their way to get it, Hill asked to be let out of the car; that the last time he saw Hill, he was standing on the side of the road; that Hill left some of his whiskey in the car when he got out; and that Ruby then drove to Willie Carter's home. He said he stayed at Carter's home only long enough to give him a cigarette. He denied telling Carter that he had stabbed or run over anyone. Defendant stated that he had drunk about a quart of whiskey that day, some of it before and some of it after Hill left the car.

Defendant argues that there was ample evidence from which the jury could find that he was in such a degree of drunkenness as to render him incapable of forming a wilful, deliberate and premeditated purpose or intent to kill the deceased, and that the trial court's refusal to grant instruction "M" prevented the jury from considering an important aspect of the law of the case.

■ Instruction "M" is a correct statement of the law. *Drinkard* v. *Commonwealth*, 165 Va. 799, 803, 183 S.E. 251, 253 (1936); *Little* v. *Commonwealth*, 163 Va. 1020, 1024-25, 175 S.E. 767, 769 (1934). Although an instruction correctly states the law, if it is not applicable to the facts and circumstances of the case,

it should not be given. *See Banner* v. *Commonwealth*, 204 Va. 640, 647, 133 S.E.2d 305, 310 (1963). An instruction must be supported by more than a scintilla of evidence. *Gibson* v. *Commonwealth*, 216 Va. 412, 417, 219 S.E.2d 845, 849 (1975).

■ To justify an instruction on voluntary drunkenness, the evidence must show more than the mere drinking of alcohol. In *Johnson* v. *Commonwealth*, 135 Va. 524, 115 S.E. 673 (1923), we said:

"When a man has become so greatly intoxicated as not to be able to deliberate and premeditate, he cannot commit murder of the first degree, or that class of murder under our statute denominated a wilful, deliberate and premeditated killing. But so long as he retains the faculty of willing, deliberating and premeditating, though drunk, he is capable of committing murder in the first degree; and if a drunk man is guilty of a wilful, deliberate and premeditated killing, he is guilty of murder in the first degree." 135 Va. at 531, 115 S.E. at 675-76.

■ The evidence in the present case shows that defendant had been drinking whiskey on the day of the offense, but it is insufficient to show that he was so intoxicated as to render him incapable of committing a wilful, deliberate and premeditated act designed to kill the deceased. Defendant showed an awareness of the events that led to decedent's death when his father and Ruby told him not to back the automobile over Hill. His response to Ruby was that if she did not shut her mouth, she would "get the same thing." Shortly after Hill was run over, defendant told Carter that he had stabbed a man and run over him with his automobile. Carter observed that defendant had been drinking but there was no indication that he was drunk. After leaving Carter's home, defendant went to a service station, changed a tire on the car, washed the car, and drove back to Mt. Airy. Those events at the time the offense was committed and immediately thereafter show that, even though defendant had been drinking, he was aware of his actions and was not too intoxicated to form the intent requisite for murder in the first degree. Defendant did not claim he was so intoxicated that he was unaware of the events causing Hill's death. Hence, the trial court did not err in refusing instruction "M."

For the reasons stated, the judgment is

*Affirmed.*