COURT OF APPEALS OF VIRGINIA


Present:   Judges Petty, Alston and Senior Judge Coleman
Argued at Alexandria, Virginia


PASTOR ARMANDO GUERRERO-GIRON
                                                    MEMORANDUM OPINION[*] BY
v.        Record No. 1903-10-4                    JUDGE WILLIAM G. PETTY
                                                       NOVEMBER 8, 2011
COMMONWEALTH OF VIRGINIA


                FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
                            Jan L. Brodie, Judge[1]

          Deborah E. Kramer for appellant.

          Erin M. Kulpa, Assistant Attorney General (Kenneth T. Cuccinelli,
          II, Attorney General, on brief), for appellee.


        Appellant, Pastor Armando Guerrero-Giron, was convicted by a jury of malicious

wounding, in violation of Code § 18.2-51, and was sentenced to eight years' imprisonment.[2]  On

appeal, appellant assigns the following errors to the trial court's rulings:  (1) the trial court erred

in prohibiting appellant from asking a witness during cross-examination the precise penalty

range of the crimes with which the witness was charged; (2) the trial court erred in admitting a

BB gun and two baseball bats into evidence; (3) the trial court erred in admitting into evidence

appellant's statement that he had been jumped into the Mexican Pride gang at some point

allegedly after the date of the offense; (4) the trial court erred in denying appellant's motion to

        [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

        [1] Judge Leslie M. Alden heard appellant's motion to suppress below, and Judge Brodie
presided at appellant's trial and sentencing.

        [2] Appellant was also tried for participation in a criminal street gang, in violation of Code
§ 18.2-46.2, but the trial court granted appellant's motion to strike that count at the close of the
evidence.

suppress his confession, because it was tainted by a previous inadmissible confession; and (5) the trial court erred in refusing to instruct the jury on "heat of passion" as a defense to malicious wounding, because the evidence supported such an instruction. For the reasons expressed below, we conclude that the trial court did not err. Therefore, we affirm the trial court's judgment.

I.

Because the parties are fully conversant with the record in this case and this memorandum opinion carries no precedential value, we recite only those facts and incidents of the proceedings as are necessary to the parties' understanding of the disposition of this appeal. "On appeal, 'we review the evidence in the light most favorable to the Commonwealth, granting to it all reasonable inferences fairly deducible therefrom.'" Archer v. Commonwealth, 26 Va. App. 1, 11, 492 S.E.2d 826, 831 (1997) (quoting Martin v. Commonwealth, 4 Va. App. 438, 443, 358 S.E.2d 415, 418 (1987)).

II.

A. Cross-Examination

Appellant first contends that the trial court erred in prohibiting appellant from asking a witness during cross-examination the precise penalty range of the crimes with which the witness was charged. Appellant argues that this violated his rights under the Confrontation Clause of the Sixth Amendment. We disagree.

We review constitutional arguments *de novo* as questions of law. Shivaee v. Commonwealth, 270 Va. 112, 119, 613 S.E.2d 570, 574 (2005). "An accused has a right to cross-examine prosecution witnesses to show bias or motivation and that right, when not abused, is absolute. The right emanates from the constitutional right to confront one's accusers." Brown v. Commonwealth, 246 Va. 460, 464, 437 S.E.2d 563, 564-65 (1993). Specifically, "'a defendant is entitled to show that testimony of a prosecution witness was motivated by an

expectation of leniency in a future trial.'" Id. at 464, 437 S.E.2d at 565 (quoting Hewitt v.

Commonwealth, 226 Va. 621, 623, 311 S.E.2d 112, 114 (1984)). Although a cross-examiner

generally may ask "'anything tending to show the bias on the part of a witness,'" Scott v.

Commonwealth, 18 Va. App. 692, 694, 446 S.E.2d 619, 619-20 (1994) (emphasis omitted)

(quoting Henning v. Thomas, 235 Va. 181, 188, 366 S.E.2d 109, 113 (1988)), a cross-examiner

does not have unlimited liberties, id. at 694, 446 S.E.2d at 620. "The scope of cross-examination

in general, and the extent of testimonial impeachment in particular, are left to the sound

discretion of the trial court and are not subject to review unless plainly abused." Id. at 693-94,

446 S.E.2d at 619. However, "[i]t is only after the right of cross-examination has been

substantially and fairly exercised that the allowance of further cross-examination becomes

discretionary with the court." Moore v. Commonwealth, 202 Va. 667, 669, 119 S.E.2d 324, 327

(1961).

On the facts before us, we conclude that appellant substantially and fairly exercised his

right to cross-examine the witness in question regarding the witness' potential bias or motive to

lie and that the trial court did not abuse its discretion by limiting the extent of this line of

cross-examination.

Leonardo Carbajal Gonzalez testified on behalf of the Commonwealth as an eyewitness

to the beating for which appellant was convicted. Gonzalez testified that both he and appellant

were members of the Mexican Pride gang and that he was with appellant when appellant hit the

victim multiple times with a baseball bat. During cross-examination, defense counsel confronted

Gonzalez with his indictment on the charges of malicious wounding and illegal street gang

participation. Defense counsel then asked Gonzalez whether it was correct that these charges

carried a "significant possibility of prison" and "lots and lots of prison," and Gonzalez responded

in the affirmative. Defense counsel then asked whether Gonzalez was "hoping that by helping

the Commonwealth out today that [he] might do less prison," to which Gonzalez also responded in the affirmative.[3]

Prior to trial, defense counsel had indicated that she desired to ask Gonzalez about the exact number of years to which he could be sentenced for the crimes for which he was indicted. She felt this was important for the purpose of trying to show bias or motive for not telling the truth. The trial court instructed counsel that she could say Gonzalez was facing a significant, considerable, or large amount of possible prison time for the crimes with which he had been charged, but that she could not mention an exact range or time frame. Contrary to appellant's contentions, this was not error.

The questions that defense counsel asked during her cross-examination clearly elicited the fact that Gonzalez was facing a potentially large amount of prison time for his own charged offenses and that by testifying for the Commonwealth against appellant, he was hoping to gain leniency. This certainly demonstrated to the jury that Gonzalez had a strong personal reason for giving favorable testimony on behalf of the Commonwealth. Thus, this questioning constituted a substantial and fair exercise of appellant's right to cross-examine Gonzalez regarding bias and motivation. Accordingly, "the allowance of further cross-examination [was] discretionary with the [trial] court." Moore, 202 Va. at 669, 119 S.E.2d at 327.

What appellant wished to do beyond this was to elicit testimony before the jury regarding the exact range of punishment Gonzalez was facing. However, Gonzalez had been indicted for participation in a criminal street gang and for malicious wounding, which is a lesser-included offense of aggravated malicious wounding. Appellant was then on trial for participation in a

---

[3] During his direct examination, Gonzalez had acknowledged that although he did not "have any sort of deal with the Commonwealth as to [what was] going to happen in [his] case," he was "hoping to get one."

street gang and aggravated malicious wounding.[4]  Thus, any mention of the sentence that Gonzalez was potentially facing would have informed the jury of the sentencing range for the crimes for which appellant was then being tried.  The trial court was certainly well within its discretion to prohibit this from occurring.  See Walls v. Commonwealth, 38 Va. App. 273, 279, 563 S.E.2d 384, 387 (2002) ("[T]he available range of punishment upon conviction for a crime is not relevant to the issue of guilt or innocence.").[5]

Thus, despite the fact that the trial court prohibited appellant from asking Gonzalez the specific sentence he was facing, appellant had the opportunity to fully explore Gonzalez's possible bias or motive to lie.  Because the trial court allowed appellant to ask Gonzalez generally about the prison time he was facing and to question Gonzalez specifically about his hopes for leniency, the trial court did not abuse its discretion by precluding appellant from questioning Gonzalez about the exact sentencing range.  Cf. Whittaker v. Commonwealth, 217 Va. 966, 967-68, 234 S.E.2d 79, 81 (1977) (holding that the trial court erred in prohibiting a defendant from asking *any* questions regarding alleged leniency in sentencing that may have motivated a witness to testify against the defendant).  Defense counsel's purpose in seeking to elicit this information on cross-examination was adequately served without the addition of specific details regarding the precise sentencing range Gonzalez was facing.

---

[4] Although appellant was tried for aggravated malicious wounding, the jury convicted him of the lesser-included offense of malicious wounding.

[5] We note that the trial court granted the Commonwealth's pre-trial motion *in limine* "to prohibit defense counsel from questioning the jury panel about the range of punishment that may be imposed upon defendant," and "to prohibit defense counsel from mentioning the range of punishment that may be imposed upon defendant during the guilt phase of the trial, including opening statement and closing argument."  Appellant has not assigned error to these rulings on appeal.

B.  The BB Gun and Baseball Bats

Appellant next contends that the trial court erred in admitting into evidence a BB gun and two baseball bats the police obtained from appellant's residence.  He argues that these objects were not relevant and were unfairly prejudicial to him.  We disagree.

We review a trial court's decision regarding the admissibility of evidence for abuse of discretion.  Gonzales v. Commonwealth, 45 Va. App. 375, 380, 611 S.E.2d 616, 618 (2005) (en banc).  The standard for establishing the relevance of proposed evidence is relatively low: "Evidence is relevant if it has any logical tendency, however slight, to establish a fact at issue in the case."  Ragland v. Commonwealth, 16 Va. App. 913, 918, 434 S.E.2d 675, 678 (1993).  "'The test establishing relevance is not whether the proposed evidence conclusively proves a fact, but whether it has any tendency to establish a fact at issue.'"  Holsapple v. Commonwealth, 39 Va. App. 522, 537-38, 574 S.E.2d 756, 763 (2003) (en banc) (quoting Wise v. Commonwealth, 6 Va. App. 178, 188, 367 S.E.2d 197, 203 (1988)).

One of the crimes with which appellant was charged and for which he was on trial was that of participation in a criminal street gang, in violation of Code § 18.2-46.2.  Although the trial court granted appellant's motion to strike the gang participation count at the close of the evidence, we must evaluate the relevance of the baseball bats and BB gun by examining whether they had any logical tendency to establish a fact pertaining to *either* the gang participation count *or* the aggravated malicious wounding count.

Detective William Woolf testified that he recovered two baseball bats and a BB gun that said MP13 on it from appellant's residence.  Specifically, Detective Woolf testified that he recovered these items from a partitioned area of the living room.  Appellant identified other items that were also found in the partitioned area as belonging to him, and he specifically acknowledged that the BB gun was his.

During his direct examination, Gonzalez acknowledged that he had been present at crimes committed by the Mexican Pride gang. According to Gonzalez, sometimes when a rival gang member did something to a Mexican Pride member, Mexican Pride members would retaliate by jumping or hurting the rival gang member. Gonzalez testified that sometimes weapons were involved in these retaliations and that most of the time those weapons were bats. Gonzalez also testified that the hand signs indicating "M" and "P" were the signs for the Mexican Pride gang.[6]

In light of this testimony, the BB gun and bats had some logical tendency to show that appellant was associated with the Mexican Pride gang, which was a fact at issue with respect to the gang participation count against appellant. The fact that the gun and bats were recovered from appellant's residence three months after the assault occurred was certainly a pertinent fact for the jury to consider in determining what weight to accord this evidence, but it did not render the evidence inadmissible.

Furthermore, appellant argues that the admission of the gun and bats into evidence caused him unfair prejudice. "In determining whether relevant evidence should be admitted, the trial court must apply a balancing test to assess the probative value of the evidence and any undue prejudicial effect of that evidence." Juniper v. Commonwealth, 271 Va. 362, 412, 626 S.E.2d 383, 415 (2006). "The determination to admit such relevant evidence rests within the trial court's sound discretion and will be disturbed on appeal only upon a showing of an abuse of that discretion." Id. We see no abuse of the trial court's discretion here in determining that the probative value of this particular evidence vis-à-vis any prejudicial effect it may have had was sufficient to justify admitting it.

---

[6] Similarly, the victim testified that MP "means Mexican Pride," and Detective Woolf testified that MP is a means whereby Mexican Pride gang members identify their gang.

Thus, we hold that the BB gun and baseball bats were relevant and that the trial court did not err in admitting them into evidence.

### C. Appellant's Statement Regarding His Gang Initiation

Appellant next contends that the trial court erred in admitting into evidence appellant's statement that he had been jumped into the Mexican Pride gang at some point allegedly after the date of the offense. He argues that this evidence was not relevant and was unfairly prejudicial to him. Again, we disagree.

As already noted, we review a trial court's decision regarding the admissibility of evidence for abuse of discretion. Gonzales, 45 Va. App. at 380, 611 S.E.2d at 618. "Evidence is relevant if it has any logical tendency, however slight, to establish a fact at issue in the case." Ragland, 16 Va. App. at 918, 434 S.E.2d at 678. "'The test establishing relevance is not whether the proposed evidence conclusively proves a fact, but whether it has any tendency to establish a fact at issue.'" Holsapple, 39 Va. App. at 537-38, 574 S.E.2d at 763 (quoting Wise, 6 Va. App. at 188, 367 S.E.2d at 203).

Detective Woolf interviewed appellant in early November 2009. The assault in question occurred on August 15, 2009. During his interview with Detective Woolf, appellant acknowledged that he was a member of Mexican Pride and that he had been "jumped in," or initiated into the gang as a member, "a couple months [before the interview]." The language "a couple months" is certainly imprecise. However, if taken literally, it would indicate that appellant became a formal gang member sometime in early September 2009. Thus, appellant argues that his statements were irrelevant, since they showed he was not a member of the gang at the time of the assault.

Appellant's argument fails because the jury was not bound to believe that appellant was jumped into Mexican Pride only two months before his interview with Detective Woolf. It is

- 8 -

well established that "a jury is not required to accept *in toto* an accused's statement, but may rely on it in whole, in part, or reject it completely." Rollston v. Commonwealth, 11 Va. App. 535, 547, 399 S.E.2d 823, 830 (1991); see also Bazemore v. Commonwealth, 42 Va. App. 203, 213, 590 S.E.2d 602, 607 (2004) (en banc) (recognizing that a jury is "free to believe or disbelieve, in part or in whole, the testimony of any witness").

Gonzalez testified that he was present when appellant was jumped into Mexican Pride and that this occurred "about two months or three months before [September or October 2009]." Although Gonzalez did not remember the exact date appellant was jumped in, he unequivocally affirmed that "[i]t was before the crime." Thus, the jury could have taken appellant's imprecise language of "a couple months" and interpreted it in light of Gonzalez's clear testimony that appellant had been jumped into Mexican Pride before the assault in question occurred. Alternatively, even if the jury believed that appellant's statements to Detective Woolf conveyed the idea that he was not a member of Mexican Pride on August 15, 2009, the jury was free to disbelieve this particular idea and to believe instead the testimony of Gonzalez. The jury was free to accept appellant's general admission that he was a member of Mexican Pride and to reject his representation regarding the time of his initiation.

Appellant's statements to Detective Woolf regarding his gang membership had some "logical tendency . . . to establish a fact at issue in the case." Ragland, 16 Va. App. at 918, 434 S.E.2d at 678. Thus, this evidence was relevant. Moreover, we fail to see any prejudicial effect appellant's statements may have had that would have counter-balanced their probative value to such a degree as to require their exclusion. Therefore, we hold that the trial court did not abuse its discretion in admitting these statements.

D. Appellant's Confession to the Police

Appellant next contends that the trial court erred in denying his motion to suppress his confession to the police because it was tainted by a previous inadmissible confession. Appellant argues that he was in custody when the police interviewed him at his residence. Since the police did not give appellant Miranda warnings until they later questioned him at the police station, appellant argues that his initial confession at his residence was illegally obtained and tainted his second confession at the police station. Accordingly, appellant maintains that his second confession should have been suppressed as the fruit of the poisonous tree.[7] We disagree.

"Miranda warnings are due only when a suspect interrogated by the police is 'in custody.'" Thompson v. Keohane, 516 U.S. 99, 102 (1995); see also Aldridge v. Commonwealth, 44 Va. App. 618, 641, 606 S.E.2d 539, 550 (2004) ("[T]he United States Supreme Court has long recognized that Miranda warnings are implicated only during a custodial interrogation."). "Thus, if a suspect gives an unwarned, voluntary confession *before* being taken into custody, a subsequent confession exacted after the suspect has been taken into custody and informed of his Miranda rights need not be suppressed." Aldridge, 44 Va. App. at 641-42, 606 S.E.2d at 551 (emphasis in original) (citing Oregon v. Elstad, 470 U.S. 298, 313-14 (1985)). "[W]hether a suspect is 'in custody,' and therefore entitled to Miranda warnings,

---

[7] Although we decide this issue on the grounds that appellant was not initially in custody for purposes of Miranda, we note that the "fruit of the poisonous tree" doctrine applicable to Fourth Amendment violations does not apply to Miranda violations. See Oregon v. Elstad, 470 U.S. 298, 305-09 (1985) (setting forth and explaining this distinction). As the United States Supreme Court has explained, while "[f]ailure to administer Miranda warnings creates a presumption of compulsion," this presumption "does not require that the statements and their fruits be discarded as inherently tainted." Id. at 307. Rather, "absent deliberately coercive or improper tactics in obtaining the initial statement, the mere fact that a suspect has made an unwarned admission does not warrant a presumption of compulsion." Id. at 314. In such circumstances, "[a] subsequent administration of Miranda warnings to a suspect who has given a voluntary but unwarned statement ordinarily should suffice to remove the conditions that precluded admission of the earlier statement." Id.

- 10 -

presents a mixed question of law and fact." Thompson, 516 U.S. at 102. Accordingly, "'we are bound by the trial court's findings of historical fact unless 'plainly wrong' or without evidence to support them,'" Medley v. Commonwealth, 44 Va. App. 19, 29, 602 S.E.2d 411, 415 (2004) (en banc) (quoting McGee v. Commonwealth, 25 Va. App. 193, 198, 487 S.E.2d 259, 261 (1997) (en banc)), "but we review *de novo* the trial court's application of defined legal standards . . . to the particular facts of the case," id. (citing Ornelas v. United States, 517 U.S. 690, 699 (1996)).

In determining whether a suspect is in custody for purposes of Miranda, a court is to examine "'the circumstances surrounding the interrogation'" and to ask whether, "'given those circumstances, . . . a reasonable person [would] have felt he or she was not at liberty to terminate the interrogation and leave.'" Yarborough v. Alvarado, 541 U.S. 652, 663 (2004) (quoting Thompson, 516 U.S. at 112). Furthermore, "'the initial determination of custody depends on the objective circumstances of the interrogation, not on the subjective views harbored by either the interrogating officers or the person being questioned.'" Id. (quoting Stansbury v. California, 511 U.S. 318, 323 (1994) (per curiam)). Hence, "[i]f a reasonable person in the suspect's position would have understood that he or she was under arrest, then the police are required to provide Miranda warnings before questioning." Harris v. Commonwealth, 27 Va. App. 554, 564, 500 S.E.2d 257, 262 (1998). The types of circumstances relevant to this analysis are legion. See Hasan v. Commonwealth, 276 Va. 674, 679-80, 667 S.E.2d 568, 571 (2008) (listing a multitude of relevant circumstances and then cautioning that such a list "is not exhaustive").

Under the circumstances here, we believe that a reasonable person in appellant's position would not have understood that he was under arrest. Another resident of appellant's apartment had invited two police officers into the apartment so they could see whether a missing juvenile was inside. Appellant was not in the apartment when the police initially entered. The resident who admitted the police identified an area of the living room that was partitioned off with sheets

suspended from the ceiling as the area where appellant stayed.[8] The two officers saw several individuals inside this partitioned area, whom they knew to be Mexican Pride gang members. The officers began to ask these individuals about the missing juvenile, and Detective Woolf saw a cardboard box on the floor containing several car stereos that appeared to him to have been stolen.

After a few minutes, appellant entered the apartment, accompanied by several companions, including a female matching the missing juvenile's description. This brought the number of individuals in the apartment who were not police officers to approximately eight. Many, if not all, of these individuals were suspected to be gang members, and the two officers called for backup. Detective Woolf testified that the most police officers present at any given time in the apartment were "probably four or five."

After the police questioned the female juvenile, Detective Woolf related that he asked appellant if he could speak with him. Detective Woolf testified, "We said, 'Can we talk to you for a second?' and motioned towards the bedroom." Detective Woolf and another police officer moved down the hallway and into a bedroom to talk with appellant, to be out of the hearing range of the other individuals present in the apartment. In the bedroom, the two officers and appellant stood in "a triangle format," with one officer off to either side of appellant.[9] The officers asked appellant about the missing juvenile, and then they also asked him about the stereos. Appellant admitted that the stereos were stolen and that he and two other gang members had taken them. This first conversation with appellant lasted for several minutes, at the conclusion of which the officers told appellant, "You can go back now." A little later, the

_____

[8] Detective Woolf, who was one of the officers that initially entered the residence, testified that the police knew appellant "to be the boyfriend of the missing juvenile."

[9] One of the officers was standing by the bed, guarding the BB gun they had found and laid there, and the other officer was standing by a computer that was in the room.

officers asked appellant, "Can we talk to you again?" and motioned towards the door. The officers questioned appellant further regarding the stereos,[10] and after five or ten minutes "sent him back out," not arresting him until later.

During this interaction with appellant at the apartment, Detective Woolf never asked appellant anything concerning the separate assault incident that underlies appellant's conviction for malicious wounding now on appeal. It was only after the police arrested appellant, took him to the police station, provided him with Miranda warnings, and received his written consent to speak with them, that the officers broached the subject of the malicious wounding incident.

Given these circumstances, a reasonable person in appellant's position would not have believed he was under arrest. See Harris, 27 Va. App. at 564, 500 S.E.2d at 262. The police officers never physically seized or restrained appellant, never drew their weapons, never confined appellant in a police car, never engaged in incidents of formal arrest such as booking, did not question appellant for a lengthy period of time, questioned him at his own residence while several of his companions were at the residence, and had no indication that appellant "was uniquely susceptible to intimidation." See Hasan, 276 Va. at 679-80, 667 S.E.2d at 571 (including these circumstances among a list of circumstances to "consider in determining whether a suspect is in custody" for purposes of requiring Miranda warnings). The officers asked appellant if they could talk with him, and appellant consented and answered their questions. We see no reason why appellant reasonably would have supposed himself to be under arrest when he consented to talk with the officers. Therefore, we hold that appellant was not in custody and did not require Miranda warnings when the officers questioned him at the

---

[10] At some unknown point, once the police found out the stereos were stolen, they moved the stereos into the bedroom, since they "didn't want them accessible to the other individuals in the apartment for fear of evidence destruction."

- 13 -

apartment. Accordingly, the trial court did not err in denying appellant's motion to suppress his confession.

### E. Jury Instruction Regarding Heat of Passion

Finally, appellant contends that the trial court erred in refusing to instruct the jury on "heat of passion" as a defense to malicious wounding. Appellant argues that the evidence supported such an instruction. We disagree.

"When reviewing a trial court's refusal to give a proffered jury instruction, we view the evidence in the light most favorable to the proponent of the instruction." Commonwealth v. Vaughn, 263 Va. 31, 33, 557 S.E.2d 220, 221 (2002). "If there is evidence in the record to support the defendant's theory of defense, the trial judge may not refuse to grant a proper, proffered instruction." Delacruz v. Commonwealth, 11 Va. App. 335, 338, 398 S.E.2d 103, 105 (1990). However, "'[a]n instruction must be supported by more than a scintilla of evidence.'" Juniper v. Commonwealth, 271 Va. 362, 418, 626 S.E.2d 383, 419 (2006) (quoting Hatcher v. Commonwealth, 218 Va. 811, 814, 241 S.E.2d 756, 758 (1978)). "An instruction accurately stating the law is nonetheless improperly given if it is 'inapplicable to the facts and circumstances of the case.'" Id. (quoting Hatcher, 218 Va. at 813-14, 241 S.E.2d at 758).

Specifically, a heat of passion instruction is warranted "if it can reasonably be inferred from the Commonwealth's evidence that [the defendant] acted in the heat of passion," or alternatively, if the defendant "produces some credible evidence that he acted in the heat of passion." Hodge v. Commonwealth, 217 Va. 338, 345, 228 S.E.2d 692, 697 (1976). Since "malice and heat of passion cannot coexist," a defendant who acts in the heat of passion *ipso facto* acts without malice. Id. Appellant was charged with aggravated malicious wounding. Thus, if it could reasonably be inferred from the Commonwealth's evidence that appellant acted in the heat of passion, he was entitled to have the jury instructed on heat of passion.

"'Heat of passion' refers to the *furor brevis* which renders a man deaf to the voice of reason." Caudill v. Commonwealth, 27 Va. App. 81, 85, 497 S.E.2d 513, 514 (1998). A person acts in the heat of passion, and thus without malice, "'when provocation reasonably produces fear [or anger] that causes [him] to act on impulse without conscious reflection.'" Rhodes v. Commonwealth, 41 Va. App. 195, 200, 583 S.E.2d 773, 776 (2003) (first alteration in original) (quoting Graham v. Commonwealth, 31 Va. App. 662, 671, 525 S.E.2d 567, 571 (2000)). "'Heat of passion is determined by the nature and degree of the provocation and may be founded upon rage, fear or a combination of both.'" Id. at 200-01, 583 S.E.2d at 776 (quoting Barrett v. Commonwealth, 231 Va. 102, 106, 341 S.E.2d 190, 192 (1986)). "The law requires the simultaneous occurrence of both reasonable provocation and passion." Graham, 31 Va. App. at 671, 525 S.E.2d at 571. "'[W]ords alone, however insulting or contemptuous, are *never* a sufficient provocation' for one to seriously injure or kill another." Caudill, 27 Va. App. at 85, 497 S.E.2d at 515 (quoting Canipe v. Commonwealth, 25 Va. App. 629, 643, 491 S.E.2d 747, 754 (1997)).

Here, the evidence showed that appellant and four other individuals went to Culmore looking for rival gang members, in response to a phone call from a friend telling them that rival gang members were trying to fight or hurt the friend. Appellant and his companions went with the purpose of defending their friend. When appellant and his companions arrived in Culmore, they chased after two rival gang members, but did not catch them. They then saw the victim crossing the street. After they said something that informed the victim who they were,[11] the

---

[11] Detective Woolf testified that appellant told him that one of appellant's companions had identified the victim as a rival gang member and that the group then approached the victim and started yelling, "MP." Likewise, the victim testified that he heard somebody yelling "MP" and that he turned around and saw a group of individuals who proceeded to assault him. Gonzalez testified that when the group saw the victim, one of them audibly identified the victim as a rival gang member and that those were the words that the victim heard and to which he responded.

- 15 -

victim made a profane comment to them and starting running towards them. Gonzalez, who was one of the group, started running towards the victim, but stopped when the victim "started reaching for something to his back." Gonzalez testified that he was scared and thought the victim may have had a knife or perhaps was simply trying to scare Gonzalez. Regardless, Gonzalez "moved out of the way," and the victim continued running. Appellant then swung a bat at the victim, missing him on the first swing, but hitting him on the second swing, causing him to fall to the ground.

This evidence is not sufficient to support a reasonable inference that appellant acted in the heat of passion when he struck the victim with a baseball bat. First, the evidence does not permit an inference that appellant was reasonably provoked by an attack on an unidentified friend at the moment he assaulted the victim. See Graham, 31 Va. App. at 671, 525 S.E.2d at 571 ("The law requires the simultaneous occurrence of both reasonable provocation and passion."). Although appellant and his companions initially set out to defend one of their friends, there is no evidence that they ever saw the friend or had any information specifically linking the victim to an attack on the friend. Even assuming that an attack on the friend would have served as reasonable provocation for appellant's attack on the victim, we must note that this provocation did not occur at the same time as appellant's assault on the victim. Rather, "there was reasonable time or opportunity for [appellant's passion to cool]," which means that his assault "is attributable to malice and not heat of passion." Miller v. Commonwealth, 5 Va. App. 22, 25, 359 S.E.2d 841, 842 (1987).

Second, the evidence does not support a reasonable inference that the victim's behavior reasonably provoked appellant to the point of his becoming "deaf to the voice of reason." Caudill, 27 Va. App. at 85, 497 S.E.2d at 514. The victim's profane comment to appellant and his companions, considered by itself, is insufficient as a matter of law to support an inference

that appellant acted in the heat of passion.  See id. at 85, 497 S.E.2d at 515 ("'[W]ords alone, however insulting or contemptuous, are *never* a sufficient provocation' for one to seriously injure or kill another." (quoting Canipe, 25 Va. App. at 643, 491 S.E.2d at 754)).  Moreover, even when the victim's actions of running towards the group and reaching behind his back are added to the analysis, the situation simply is not one that would cause a reasonable person to become so frightened or enraged as to act in a manner devoid of reason.  Appellant was in a group of five individuals, whereas the victim was by himself.  Furthermore, even though Gonzalez testified that he was scared, he simply responded by moving out of the victim's way.  The situation was not such that a reasonable person in appellant's position, armed with a baseball bat and surrounded by allies, would have been so provoked by the victim's behavior as to have become a mere pawn in the hand of an overpowering *furor brevis*.

In sum, we hold that the evidence does not support a reasonable inference that appellant acted in the heat of passion when he struck the victim with a baseball bat.  Therefore, we conclude that the trial court did not err in refusing to instruct the jury on heat of passion.

III.

For the foregoing reasons, we affirm the judgment of the trial court.

Affirmed.